SUHRHE INRICH, Circuit Judge.
Plaintiffs-Appellants Mary Jordan and Angel Williams (“Plaintiffs”) appeal from the order of the district court granting summary judgment in favor of DefendantAppellee Nicole Williams (‘Williams”) and *515 the Lucas County Children Services Board (“LCCSB”) on various theories arising under federal and state law. For the reasons that follow, we AFFIRM the judgment of the lower court.
I. Background
Mary Jordan (“Jordan”) was born on May 11, 1926, and is the mother of sixteen children. She has resided at 2472 Lawrence Avenue in Toledo, Ohio for thirty years. On April 10, 1998, Jordan and her then minor granddaughter, Angel Williams (“Angel”), were at Jordan’s house. At the time, Jordan was acting as the legal guardian for Angel and several other children. At approximately eight o’clock in the morning, Jordan responded to a knock on the door by Defendant Officer Sergeant Richard Murphy of the Toledo Police Division. Officer Murphy was investigating a complaint that Jordan’s house was filthy and full of trash. He spoke with Jordan on the front porch of the house while Angel stood in the doorway. It is undisputed that Officer Murphy did not enter the house and left after concluding his conversation with Jordan. Although the subject of the conversation is unclear, Jordan testified at her deposition that Officer Murphy was carrying some “blue papers” and that he informed Jordan he was going to come back with some help.
On April 10, 1998, at approximately twelve-thirty in the afternoon, the LCCSB received a report of possible neglected children at Jordan’s residence. The report apparently stated that the house was in deplorable condition and that Jordan was caring for twenty-five children. Williams, a caseworker in the Assessment Department of the LCCSB, was assigned to investigate the report.
Williams went to Jordan’s residence where she met Officer Murphy and other Toledo Police Officers. Officer Murphy informed Williams that he had been at Jordan’s house earlier in the day and that he had observed that the house was filthy and full of trash. He also informed Williams that he had observed several children in the house.
The police officers allegedly knocked on the front door, but after receiving no answer they proceeded to enter the house through an open side door. Williams followed the officers into the house. It is uncontroverted that the police did not secure a warrant to authorize the entry into Jordan’s house. Williams stated in her affidavit that it was the consensus of the personnel at the scene that the children in the Plaintiffs house were in immediate danger because of the deplorable conditions of the house and that removal was necessary to prevent immediate physical harm.
Williams alleges that upon following the police into the house she observed trash, filth, and a very bad odor. Once inside the house, the officers announced their presence and called for Jordan until she came downstairs. The officers informed Jordan that they were there to check on the condition of the children. According to Williams, the children and their clothing were dirty. Williams attempted to explain to Jordan that her house was unsafe and that the children should not be there. However, Jordan and Angel refused to cooperate and, at least initially, would not answer questions relating to the identity of the children. The officers went upstairs and retrieved the children while Jordan stayed on the first floor by the door. When Jordan and Angel attempted to stop the police from taking the children into custody, the officers arrested them both. The children were taken into the custody of the LCCSB, and the Lucas County Juvenile Court eventually placed them in the custody of other relatives.
*516 Jordan alleges that during these events she suffered an injury to her knee when she was knocked into the railing by an officer attempting to climb the stairs. She also alleges that another officer pushed her into a wall or a door and injured her back.
On March 2, 2000, Jordan filed a complaint in the Lucas County Court of Common Pleas (Ohio) on behalf of herself and as next friend of the minor children, against Officer Murphy, Williams, and five additional officers of the Toledo Police Department, all in their individual capacities. She also sued the LCCSB. The complaint asserted claims pursuant to 42 U.S.C. § 1983; state tort claims of assault, battery and false imprisonment; and a civil conspiracy charge. On April 5, 2000, the action was removed to the United States District Court for the Northern District of Ohio. On November 6, 2000, Jordan and Angel filed an amended complaint. The complaint asserted the same claims as the original complaint but named Angel as an adult[1] and removed the other minor children as plaintiffs.
On July 24, 2001, Williams and the LCCSB moved for summary judgment. The Toledo Police Officers moved for partial judgment on the pleadings as to the claim of civil conspiracy, and later moved to supplement their original motion. On November 19, 2001, the district court granted the motions, concluding that Jordan’s claims of assault, battery, and false imprisonment were barred by the statute of limitations but that Angel’s claims were not so barred because she had not reached the age of majority. Additionally, the court held that under Ohio law the LCCSB and Williams were immune from suits based on the state law claims, and that there was no evidence to support the claims. The claims based on civil conspiracy were dismissed because they were not pled with specificity. As to the § 1983 claims, the district court concluded that Plaintiffs failed to plead a federal claim against the LCCSB because respondeat superior does not apply to such claims, and that Williams was entitled to qualified immunity.
The district court entered judgment on behalf of Williams and the LCCSB, dismissing the case against them in its entirety. The judgment also dismissed all of Jordan’s state law claims against Officer Murphy and the other officers, leaving only the § 1983 claim. With the exception of the conspiracy claim, all Angel’s claims against the police officers survived. On November 22, 2002, the plaintiffs settled their surviving claims against the remaining defendants pursuant to a stipulation. The district court dismissed the case with prejudice. On December 16, 2002, the district court entered a final judgment. Jordan and Angel now appeal the district court’s rulings as to Williams and the LCCSB.
II. Standard of Review
This Court reviews the district court’s grant of summary judgment de novo. Ailor v. City of Maynardville, Tennessee, 368 F.3d 587, 595 (6th Cir.2004) (citations omitted). Summary judgment is proper when there is no dispute as to a material issue of fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).
III. Analysis
Appellants raise the following errors on appeal: 1) whether the district court erred in granting summary judgment to Williams on the grounds of qualified immunity for § 1983 claims involving a violation *517 of the Fourth Amendment rights to be free from a warrantless search and to have officials “knock and announce” before entering; 2) whether the district court erred in determining that the LCCSB and Williams are immune from liability under the Ohio Political Subdivision Tort Liability Act; 3) whether the district court erred in dismissing claims pursued by Jordan and Angel under a theory of civil conspiracy; and 4) whether the district court erred in granting summary judgment to Williams and the LCCSB on the state law tort claims pursued by Angel because genuine issues of material fact exist.
A. § 1983 Claims
Plaintiffs claim that the district court erred in granting Williams qualified immunity as to two related Fourth Amendment constitutional violations: a warrant-less search and a violation of the knock- and-announce rule. Qualified immunity is available if, despite a constitutional violation, the right was not clearly established at the time of the defendants’ actions. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The dispositive inquiry in determining whether a right is clearly established is “whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Id. at 202 (citing Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).
For purposes of qualified immunity analysis, we will assume that Plaintiffs’ Fourth Amendment rights were violated.[2] The issue thus becomes whether Williams’s actions may nonetheless be excused because a reasonable case worker would not know she was violating clearly established law. Brennan v. Township of Northville, 78 F.3d 1152, 1154 (6th Cir.1996).
We have explained that for a right to be clearly established, “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Burchett v. Kiefer, 310 F.3d 937, 942 (6th Cir.2002) (internal quotations and citations omitted). The objective legal reasonableness standard requires us to analyze whether a case worker in Williams’s position objectively would have understood that she “was under an affirmative duty to have refrained from such conduct.” Bills v. Aseltine, 52 F.3d 596, 603 (6th Cir.1995) (citing Brandenburg v. Cureton, 882 F.2d 211, 215 (6th Cir.1989)).
Under this fact scenario we believe that a reasonable case worker hearing the police officers’ observations and conclusions could have reasonably understood that there was an imminent threat of physical harm to the children inside Jordan’s home. After the LCCSB received an anonymous tip, Williams was assigned to investigate whether Jordan was, in fact, caring for up to twenty-five children-not all her own-amidst deplorable conditions. Upon her arrival at Jordan’s house, Williams relied on the officers’ conclusion, based on Officer Murphy’s first-hand observations, that there were children inside and that the condition of the house required immediate intervention to prevent imminent physical *518 harm. This conclusion was consistent with the information Williams had received through her agency and was confirmed by the fact that the Lucas County Juvenile Court ultimately placed the children in the custody of other relatives. Police officers made the decision as to why, where, and how to enter Jordan’s house. Only after they gained access did Williams follow them inside.
We believe that a reasonable case worker under similar circumstances would have deferred to the police officers’ conclusion. While we recognize that state agencies such as the LCCSB have the authority to enter a home and take an endangered child into custody “[plursuant to an order of the court ...” and “[plursuant to the laws of arrest” (Ohio rev. code § 2151.31(A)(1)-(2)), case workers are also under a duty to conduct their investigations in cooperation with law enforcement officers.[3] Law enforcement officers have a duty to make, and are accustomed to making, Fourth Amendment decisions. Case workers should not have to second guess officers’ decisions, particularly where the police have told them that children are in imminent physical danger.
Given Williams’s reasonable reliance on the police officers, her statutory duty to investigate reports of abuse and neglect, and her statutory duty to cooperate with the police, we conclude that a reasonable case worker in Williams’s position would not have understood her actions as violating clearly established law.[4] Therefore, we affirm the district court’s grant of summary judgment to Williams on the § 1983 claims.
B. Ohio Political Subdivision Tort Liability Act
Appellants contend that the district court erred in granting summary judgment to Williams and the LCCSB under the Ohio Political Subdivision Tort Liability Act. See Ohio rev. code Ann. § 2744.02 (West 2004).
The Act sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. See Cater v. City of Cleveland, 83 Ohio St.3d 24, 697 N.E.2d 610, 615 (1998). First, section 2744.02(A) sets forth the following general rule of immunity: “[A] political subdivision is not hable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.” § 2744.02(A)(1). Under the second tier, the immunity afforded a political subdivision is subject to five exceptions listed in section 2744.02(B). Cater, 697 N.E.2d at 615. Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in section 2744.03 applies. Id.
1. LCCSB’s Immunity
It is undisputed here that the LCCSB falls under the definition of a po *519 litical subdivision. We next look to whether Plaintiffs can establish that one of the five specific statutory exceptions applies. As the district court notes, Plaintiffs neither state in their amended complaint nor suggest in their opposition to summary judgment motion that any exceptions apply in this instance. Therefore, it is unnecessary to address whether the LCCSB can claim any defenses. The LCCSB is entitled to immunity under section 2744.02.
2. Nicole Williams’s Immunity
Under section 2744.03 of the Ohio Revised Code, an employee of a political subdivision is also immune from civil liability unless one of the following exceptions applies:
(a) The employee’s acts or omissions were manifestly outside the scope of the employee’s employment or official responsibilities;
(b) The employee’s acts or omissions were with malicious purpose, in bad faith, or in wanton or reckless manner;
(c) Liability is expressly imposed upon the employee by a section of the Revised Code.[5]
§ 2744.03(A)(6).
Plaintiffs argue that exception (c) applies, and point to sections 2921.45 and 2911.21 of the Ohio Revised Code. Section 2921.45 states that “[n]o public servant, under color of his office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.” Ohio kev. code § 2921.45(A). Violation of section 2921.45 is a misdemeanor in the first degree. § 2921.45(B). Plaintiffs claim Williams violated section 2921.45 by making a warrantless entry and by failing to knock and announce her presence prior to entering.
Section 2911.21 states that “[n]o person, without privilege to do so, shall ... [kjnowingly enter or remain on the land or premises of another.” Ohio Rev.Code § 2911.21(A)(1).
We conclude that section 2911.21 does not apply because it is a general liability statute that does not expressly impose liability on a particular group. We agree, however, that the exception applies since section 2921.45 expressly imposes liability upon a particular class of persons, namely public servants, for a particular kind of activity.[6] Regardless of the statute’s applicability, however, Plaintiffs cannot prevail under it. Section 2921.45 imposes liability only if the constitutional violation was “knowing.” As we stated in our qualified immunity analysis, the undisputed evidence reflects that Williams reasonably relied on Officer Murphy’s assessment of the deplorable conditions and the police officers’ judgment in entering Jordan’s home without a warrant. Since there is no proof in the record that Williams knowingly violated Plaintiffs’ Fourth Amendment rights, Plaintiffs have not established an exception *520 to immunity. Therefore, the district court properly granted Williams immunity under the Ohio Political Subdivision Tort Liability Act.
C. Civil Conspiracy and State Law Claims
Plaintiffs allege that the district court erred in dismissing their civil conspiracy claim. Angel alleges that the district court erred in dismissing her claims for assault, battery and false imprisonment. Since Plaintiffs concede that Williams did not engage in any conduct that would constitute assault, battery, or false imprisonment, but rather, contend that there is a factual dispute regarding whether she conspired with others to commit these wrongful acts, we analyze both the conspiracy claim and the state law claims together. We hold that there is no evidence linking Williams to a civil conspiracy to commit assault, battery or false imprisonment.
Under Ohio law, civil conspiracy is defined as a “ ‘malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.’ ” Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 650 N.E.2d 863, 866 (1995) (quoting LeFort v. Century 21-Maitland Realty Co., 32 Ohio St.3d 121, 512 N.E.2d 640, 645 (1987)). Thus, to establish a claim of civil conspiracy, a plaintiff must show: “(1) malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy.” Aetna Cas. & Sur. Co. v. Leahey Const. Co., 219 F.3d 519, 534 (6th Cir.2000) (citation omitted). A “conspiracy claim must be pled with some degree of specificity, and vague or eonclusory allegations that are unsupported by material facts will not be sufficient to state a claim.” Avery v. Rossford, Ohio Transp. Improv. Dist., 145 Ohio App.3d 155, 762 N.E.2d 388, 395 (2001).
Plaintiffs have not provided evidence that Williams encouraged or incited an assault, battery or false arrest. Plaintiffs cite Williams’s entry into Jordan’s house without a warrant. They claim that Williams agreed with the police officers to jointly enter the house and take possession of children inside, and that, once inside, Williams insisted the children be brought to her. They further claim that the alleged assault, battery, and false imprisonment occurred as a result of this insistence.
We have already established that Williams reasonably relied on Officer Murphy’s assessment that deplorable conditions justified entry into the house without a warrant, an assessment that was later confirmed when the Lucas County Juvenile Court placed the children in the custody of other relatives. The record shows that once inside the home, Williams remained on the first floor of the house near the door and did not go upstairs. She requested to check the children, as was her duty, particularly in light of the information provided to her agency and the fact that Plaintiffs initially refused to reveal the children’s identity. Plaintiffs have offered no proof that in insisting to see the children Williams undei'stood that assaults, physical contact, or arrests of Plaintiffs were planned, that she intended the police to act in such a manner, or that she acquiesced in any subsequent police behavior to carry out such acts. That conduct properly was attributed to the police officers, if to anyone, but not to Williams. Therefore, Plaintiffs have not established the elements of conspiracy. Since there is no evidence against Williams, LCCSB is not liable under the theory of respondeat superior. Given our disposition regarding the *521 merits of Plaintiffs’ conspiracy claim, we need not address the district court’s determination that Plaintiffs did not plead conspiracy with sufficient specificity. Therefore, we affirm the district court’s decision to grant summary judgment to Williams and the LCCSB on both the conspiracy claim and Angel’s state law claims.
IV. Conclusion
For all of the reasons set forth above, we AFFIRM the judgment of the district court.

. Angel turned eighteen on November 19, 1999.

. Although neither the Supreme Court nor this Court have explicitly held that the Fourth Amendment does not create a social worker exception, (see Walsh v. Erie County Dep’t of Job & Family Servs., 240 F.Supp.2d 731, 759 (N.D.Ohio 2003)), other circuits have so held. See Dubbs v. Head Start, Inc., 336 F.3d 1194, 1205 (10th Cir.2003); Roska v. Peterson, 328 F.3d 1230, 1240 (10th Cir.2003); Doe v. Heck, 327 F.3d 492, 509 (7th Cir.2003); See also Walsh, 240 F.Supp.2d at 746-47 (citing Roska v. Peterson, 304 F.3d 982, 989 (10th Cir.2002), vacated, Roska, 328 F.3d 1230 (10th Cir.2003)) (no social worker exception to the strictures of the Fourth Amendment).

. Section 2151.421 of the Ohio Revised Code states that "a public children services agency shall investigate, within twenty-four hours, each report of known or suspected child abuse or child neglect” and that ”[t]he investigation shall be made in cooperation with the law enforcement agency.” Ohio rev. code ann. § 2151.421(F)(1) (West 2004).

. Cases such as Calabretta v. Floyd, 189 F.3d 808 (9th Cir.1999), and Walsh v. Erie County Dep't of Job & Family Servs., 240 F.Supp.2d 731 (N.D.Ohio 2003), have denied social workers qualified immunity. However, these cases are distinguishable from the present one because, in both, the social worker was in command of the investigation and used police to assist in entry. In the present case, police directed the entry.

. The current version of § 2744.03(A)(6)(c) states that, ”[c]ivil liability is expressly imposed upon the employee.” § 2744.03(A)(6)(c) (emphasis added).

. We recognize that Ohio courts have declined to find an exception to immunity where the statute relied on is a statute of general liability. See, e.g., Bundy v. Five Rivers Metroparks, 152 Ohio App.3d 426, 787 N.E.2d 1279 (2003) ("no person who is the owner or keeper of horses or mules” — R.C. 951.02) (emphasis added); Ratcliff v. Darby, No. 02CA2832, 2002 WL 31721942 (Ohio App. 4 Dist. Dec.2, 2002) (“no person shall knowingly cause another to believe that the offender will cause him serious physical harm”- — R.C. 2903.21(A) (emphasis added)). However, unlike the general liability statutes in Bundy and Ratcliff, the statute at issue here does not apply to all persons, but rather, to a specific class of persons, i.e. "public servants.”