MOORE, J., delivered the opinion of the court in which BOGGS, J., joined. SUTTON, J. (pp. 702-13), delivered a separate dissent.
OPINION
KAREN NELSON MOORE, Circuit Judge.
In 2002, Plaintiffs-Appellees Daniel Kovacic and Katherine Kovacic (collectively, “the children”) were temporarily removed from the custody of their mother Plaintiff Nancy Kovacic (“Nancy”) by Defendant Cuyahoga County Department of Children and Family Services (“CCDCFS”). De *692 fendanh-Appellant Patricia Campbell-Ponstingle, a social worker involved with the case, determined that exigent circumstances existed and, with the assistance of North Olmsted police officers, removed the children from Nancy’s home. CampbellPonstingle and Defendants-Appellants Vikki Csornok and Pam Cameron (collectively, . “the social workers”), moved for summary judgment on the Fourth and Fourteenth Amendment claims relating to the seizure of the children, arguing that they were entitled to absolute and qualified immunity. The district court denied the absolute-immunity motion in part and the qualified-immunity motion in its entirety. The social workers filed an interlocutory appeal challenging each of these rulings. For the reasons stated below, we AFFIRM the district court’s denial in part of the social workers’ absolute-immunity motion and its denial of the social workers’ qualified-immunity motion and REMAND for further proceedings.
I. BACKGROUND
Filed in 2005, this case has developed a long and complicated history. The following background is relevant to this appeal. At the time of the children’s removal, a Cuyahoga County Juvenile Court standing order was in effect providing that “all direct service social workers employed by the Cuyahoga County Department of Children and Family Services, who are responsible for the investigation of child abuse, neglect, or dependency matters, are hereby reappointed as Duly Authorized Officers of the Court in accordance with Section 2151.81 of the Ohio Revised Code and Ohio Juvenile Rule 6.” R. 125-2 (Juvenile Court Order at 1) (Page ID # 386). Pursuant to this order, “said social workers shall have the authority to remove and provide temporary emergency care and shelter for children who are at imminent risk of serious physical or emotional harm.” Id. Social workers were also permitted to “request the assistance of appropriate law enforcement officers, including but not limited to municipal police officers and county deputy sheriffs.” Id.
At a March 26, 2002 meeting, the social workers determined that exigent circumstances required immediate removal of the children from Nancy’s home. That same day, Campbell-Ponstingle effectuated a Temporary Emergency Care Order (“TEC Order”), a document completed by social workers when removing children without a warrant. R. 121-9 (TEC Order at 1) (Page ID # 330). The TEC Order required consultation with an assistant prosecuting attorney and a supervisor. Id. Upon completion of the TEC Order, Campbell-Ponstingle, accompanied by police officers, went to Nancy’s home and took the children into temporary custody of the county. The following day, Campbell-Ponstingle filed a complaint for abuse, neglect, and temporary custody with the Cuyahoga County Juvenile Court, which included a notarized document detailing her recommendation of removal and the supporting reasons. R. 121-11 (Compl. at 1) (Page ID # 332). After a hearing on March 29, 2002, the family court magistrate found that probable cause existed to support the removal and ordered the children “committed to the emergency care and custody of the Agency pending further hearing.” R. 121-14 (Magistrate Order at 1-2) (Page ID # 340-41).
On November 28, 2005, Nancy and the children filed a civil action in the U.S. District Court for the Northern District of Ohio against the CCDCFS, the social workers, and ten others. R. 1 (Compl. at 1-3) (Page ID # 1-3). In 2010, the parties filed cross-motions for summary judgment on the Fourth and Fourteenth Amendment claims relating to the seizure of the children. R. 120 (Pis.’ Mot. for Summ. J.) (Page ID # 182); R. 121 (Defs.’ Mot. for *693 Summ. J.) (Page ID # 206). The district court granted in part and denied in part the social workers’ motion for summary judgment on the basis of absolute immunity, denied the social workers’ motion for summary judgment on the basis of qualified immunity, and granted in part the children’s motion for summary judgment on their remaining Fourth and Fourteenth Amendment claims. R. 182 (Order at 55-56) (Page ID # 555-56). The social workers filed an interlocutory appeal challenging the district court’s denial of absolute and qualified immunity. R. 135 (Notice of Interlocutory Appeal at 1) (Page ID # 560) (“The Memorandum and Order and Judgment Entry issued by the District Court denied the above listed defendants’ claims of both absolute and qualified immunity.”). The merits of the children’s motion for summary judgment is not before us.
II.JURISDICTION
“Jurisdiction in this matter arises under 28 U.S.C. § 1291, granting jurisdiction to hear appeals from final judgments of district courts.” Summers v. Leis, 368 F.3d 881, 886 (6th Cir.2004). “Generally, a denial of summary judgment is not a final judgment for purposes of appeal.” Id. Judgments “where assessment of damages or awarding of other relief remains to be resolved have never been considered to be ‘final’ within the meaning of 28 U.S.C. § 1291.” Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 744, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). Because assessment of damages has yet to be resolved in this case, the district court’s summary-judgment order does not constitute a final judgment. R. 132 (Order at 55-56) (Page ID # 555-56).
The Supreme Court, however, has carved out an exception to this general rule for denials of immunity to public officials. Mitchell v. Forsyth, 472 U.S. 511, 524-27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Under this exception, “district court denials of qualified immunity may be appealed as collateral orders where (1) the defendant is a public official asserting the defense of qualified immunity, and (2) the issue appealed concerns not which facts the parties might be able to prove, but whether certain alleged facts reflect a violation of clearly established law.” Hoover v. Radabaugh, 307 F.3d 460, 465 (6th Cir.2002). In other words, “a denial of summary judgment based on a legal determination that qualified immunity is inappropriate is immediately appealable as a collateral order.” Crockett v. Cumberland Coll., 316 F.3d 571, 578 (6th Cir.2003).
Similarly, “[t]he denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor’s entitlement not to have to answer for his conduct in a civil damages action.” Leech v. DeWeese, 689 F.3d 538, 541 (6th Cir.2012) (internal quotation marks omitted). We therefore have jurisdiction to review the district court’s denial in part of absolute immunity and its denial of qualified immunity.
III. STANDARD OF REVIEW
“Whether a defendant is entitled to absolute or qualified immunity from liability under 42 U.S.C. § 1983 is a legal question that this Court reviews de novo.” Moldowan v. City of Warren, 578 F.3d 351, 374 (6th Cir.2009).
IV. ABSOLUTE IMMUNITY
The district court granted absolute immunity to the social workers- for effectuating the TEC Order, initiating formal removal proceedings, and testifying in court. R. 132 (Order at 44) (Page ID #544). The district court did not extend absolute immunity, however, to the act of removing *694 the children from Nancy’s home, determining that this was analogous to a police function rather than a prosecutorial or judicial function. Id. at 42^44 (Page ID # 542-44). The social workers challenge this distinction, arguing that they acted in conformity with precisely that which was contemplated by the TEC Order-taking custody of the children. Appellants Br. at 29. The children rejoin that “[w]hile the workers were in possession of the order, their decision on when, and how to execute it were not ‘intimately related’ to the judicial process, but were in fact the actions of a[n] individual exercising police type powers.” Appellees Br. at 18. The children further argue that the social workers’ “decision to ... take the children in the manner that they did cannot [b]e said to be the function of an advocate.” Id.
We have recognized that social workers are entitled to absolute immunity when they engage in conduct “intimately associated with the judicial phase of the criminal process.” Pittman v. Cuyahoga Cnty. Dep’t of Children & Fam. Servs., 640 F.3d 716, 724 (6th Cir.2011) (internal quotation marks omitted). In other words, “social workers are . absolutely immune only when they are acting in their capacity as legal advocates — initiating court actions or testifying under oath — not when they are performing administrative, investigative, or other functions.” Id. (internal quotation marks omitted). When applied, “[t]he defense of absolute immunity provides a shield from liability for acts performed erroneously, even if alleged to have been done maliciously or corruptly.” Dean v. Byerley, 354 F.3d 540, 554 (6th Cir.2004).
Social workers often engage in prosecutorial functions when carrying out their duties. As we explained in Pittman, absolute immunity based on a prosecutorial function covers interactions with a court, such as “testimony or recommendations given in court concerning the child’s best interests as she saw the matter.” 640 F.3d at 725 (internal quotation marks omitted). However, this immunity does not extend to “participating in agency decisions.” Id. at 726 (internal quotation marks omitted); see also Holloway v. Brush, 220 F.3d 767, 776 (6th Cir.2000) (en banc) (“It is her out-of-court actions, misinforming Holloway and failing to inform the court of the latter’s appearance, that are the basis of this suit.”). “Social workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial duty, and so are entitled to absolute immunity.” Rippy v. Hattaway, 270 F.3d 416, 421 (6th Cir.2001) (internal quotation marks omitted). Filing the complaint for abuse, neglect, and temporary custody on March 27, 2002, which initiated formal court proceedings, is clearly prosecutorial in nature under this standard and thus protected by absolute immunity. Similarly, preparing the TEC Order, which precedes the filing of the complaint, was prosecutorial in nature under this standard and thus also protected by absolute immunity.
Concerning the removal of the children from the home, the district court did not err in denying the social workers’ motion for absolute immunity. When the social workers removed the children from the home, they were acting in a police capacity rather than as legal advocates. See Millspaugh v. Cnty. Dep’t of Public Welfare, 937 F.2d 1172, 1176 (7th Cir.1991) (“Sallying forth to collect the children is no different from seizing evidence on the authority of a warrant, which again is covered by qualified immunity only.”); see also Holloway, 220 F.3d at 777 (“The question is whether the prosecutors have carried their burden of establishing that they were functioning as advocates (as opr posed, for example, to auxiliary police) *695 when they performed the actions complained of.”) (internal quotation marks and alteration omitted). We therefore AFFIRM the district court’s determination denying in part absolute immunity.
V. QUALIFIED IMMUNITY
“A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established.” Morrison v. Bd. of Trustees, 583 F.3d 394, 400 (6th Cir.2009). The social workers argue that the district court erred in denying their motion for summary judgment based on qualified immunity, contending that exigent circumstances existed and that the relevant Fourth and Fourteenth Amendment rights were not clearly established as of March 26, 2002.
A. Violation of a Constitutional Right
“[A] social worker, like other state officers, is governed by the Fourth Amendment’s warrant requirement.” Andrews v. Hickman Cnty., 700 F.3d 845, 859 (6th Cir.2012). “This would simply mean that social workers would have to obtain consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in warrantless entries and searches of homes.” Id. at 859-60. Here, the social workers did not have a warrant to remove the children from their home. They argue that they complied with the Fourth Amendment nonetheless due to exigent circumstances.
“Exigent circumstances arise when an emergency situation demands immediate police action that excuses the need for a warrant,” including “the need to assist persons who are seriously injured or threatened with such injury.” Johnson v. City of Memphis, 617 F.3d 864, 868 (6th Cir.2010) (internal quotation marks omitted). “Preventing imminent or ongoing physical abuse within a home qualifies as an exigent circumstance.” Schreiber v. Moe, 596 F.3d 323, 330 (6th Cir.2010). “[T]he cases finding exigent circumstances uniformly cite the need for prompt action by government personnel, and conclude that delay to secure a warrant would be unacceptable under the circumstances.” United States v. Rohrig, 98 F.3d 1506, 1517 (6th Cir.1996). In addition to providing an exception to the warrant requirement under the Fourth Amendment, exigent circumstances may alter the notice and hearing requirements typically required under the Fourteenth Amendment in child-removal cases. Doe v. Staples, 706 F.2d 985, 990 (6th Cir.1983) (explaining that due process requires, among other things, that “[t]he parents be given notice prior to the removal of the child (at the time of the removal when exigent circumstances exist or promptly thereafter) stating the reasons for the removal”).
The social workers direct us to the following evidence that they argue supports a finding of exigent circumstances.[1] *696 First, the social workers cite portions of Campbell-Ponstingle’s deposition testimony, where she describes that the children’s aunt told her that “Nancy pushed Katie into the door” and that Nancy “hit Danny.” R. 121-8 (Campbell-Ponstingle Tr. at 53:22-25, 60:1-3) (Page ID #311-12). Campbell-Ponstingle also recalled a prior report that “Katie received a bloody nose from her mother ... and [that Katie] was pulled by the hair and pushed into a door frame.” Id. at 38:1-39:3 (Page ID # 307-OS). Additionally, the social workers rely on Csornok’s description of the March 26, 2002 meeting at which the decision to seek a TEC Order was made. Csornok testified that several police officers attended the meeting and that it was their belief that Nancy’s failure to attend the meeting was a sign that her behavior was escalating and that she intended to kill her children.[2] R. 121-6 (Csornok Tr. at 61:13-63:20) (Page ID #278-80). However, according to Cameron, no one inquired specifically as to how the police officers knew the children or when the most recent interaction between the officers and the children occurred. R. 121-7 (Cameron Tr. at 18:13-25) (Page ID #283). The social workers further point to Cameron’s testimony, in which she describes general allegations such as “[v]erbal aggression was escalating to a lot of yelling and screaming, hair pulling.” Id. at 33:6-11 (Page ID # 288). When asked if there was a specific incident that led to the removal, Cameron stated that “I really felt upset when I learned that Katie was slapped in the face by [her] mother, because she expressed some desire to be around her father or his people, or whatever.” Id. at 34:4-8 (Page ID # 289).
When taken in the light most favorable to the children, as we must on the social workers’ summary-judgment motion, these circumstances cited by the social workers — reliance on weeks-old incidents and Nancy having missed the March 26 meeting — simply do not constitute exigent circumstances as a matter of law. See Champion v. Outlook Nashville, Inc., 380 F.3d 893, 901 (6th Cir.2004) (“First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred.”) (internal quotation marks omitted). Nor does the subsequent determination of the family court magistrate that there “is” probable cause make a difference. The relevant question is whether there was exigency, not probable cause: in the absence of exigency, a warrant is required, even “when probable cause is clearly present.” Payton v. New York, 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (internal quotation marks omitted).
Moreover, and contrary to the dissent’s intimations otherwise, the merits of the Fourth and Fourteenth Amendment claims, and the district court’s rulings on the children’s summary-judgment motion, are not before us on this interlocutory appeal, and the parties did not request that we consider the grant of partial summary judgment to the plaintiffs under the doctrine of pendent appellate jurisdiction. See McCloud v. Testa, 97 F.3d 1536, 1545 (6th Cir.1996) (“Testa does not argue that this discretionary doctrine [of pendent appellate jurisdiction] should be invoked in this case and therefore we need not address its applicability here.”). In their Notice of Interlocutory Appeal, the social workers specifically reference the denials *697 of qualified and absolute immunity as the basis for their appeal: “The Memorandum and Order and Judgment Entry issued by the District Court denied the above listed defendants’ claims of both absolute and qualified immunity.” R. 135 (Notice of Interlocutory Appeal at 1) (Page ID # 560). Additionally, the parties’ briefing makes clear that they seek review only on the district court’s immunity determinations. For example, the social workers’ opening brief includes the following statement of issues:
Whether the district court erred in denying the claim of absolute immunity of Social Workers Patricia CampbellPonstingle, Pamela Cameron and Vikki L. Csornok?
Whether the district court erred in denying the claim of qualified immunity of Social Workers Patricia CampbellPonstingle, Pamela Cameron and Vikki L. Csornok?
Appellants Br. at 3; see also id. at 1 (“Appellants ... are challenging the denial of their claims of absolute and or qualified immunity.”); id. at 5 (“The Social Workers filed their notice of appeal on September 15, 2011 from the denial of their claims of qualified and absolute immunity.”); id. at 13 (“For all the reasons set forth in this Brief, the Social Workers are entitled to absolute and or qualified immunity.”); id. at 30 (“Appellants respectfully request that their appeal be heard and that this court overrules the District Court’s denial of their claims of absolute or qualified immunity.”). Likewise, the children frame the issue on appeal as follows: “The issue before the court is one of the applicability of the affirmative defenses of qualified immunity and absolute immunity for social workers who conspired to take custody through a non-consensual seizure of minor children through the functioning of a TEC order.’-’ Appellees Br. at 1. In their reply brief, the social workers remain focused on the immunity defenses, explaining that they “offer this Court this Reply Brief in support of their request for qualified and or absolute immunity.” Reply Br. at 1; see also id. at 7 (“Appellants respectfully request that their appeal be sustained and that they be entitled to judgment on the basis of immunity.”).
In sum, there is no indication that the parties seek review of the district court’s grant of partial summary judgment to the children, and the parties have not requested that we exercise our pendent appellate discretion to review this ruling. See Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3937 (2d ed. 1987) (“[Discretion to exercise pendent appeal jurisdiction should be used sparingly.”). We therefore decline to exercise pendent appellate jurisdiction[3] and reserve judgment on those issues.
*698 B. Clearly Established Rights
We now turn to whether the law was clearly established on March 26, 2002, that a social worker could not seize children from their home without a warrant, exigent circumstances, or another recognized exception. “A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.”[4] Morrison, 583 F.3d at 400 (internal quotation marks and alterations omitted). “The objective legal reasonableness standard requires us to analyze whether a case worker in [the social workers’] position objectively would have understood that she was under an affirmative duty to have refrained from such conduct.” Jordan v. Murphy, 145 Fed.Appx. 513, 517 (6th Cir.2005) (internal quotation marks omitted). “When determining whether a constitutional right is clearly established, we look first to decisions of the Supreme Court, then to our own decisions and those of other courts within the circuit, and then to decisions of other Courts of Appeal.” Andrews, 700 F.3d at 853.
With respect to the Fourth Amendment right, basic Fourth Amendment principles establish that government officials must obtain a warrant to conduct a search or seizure on private property, absent exigent circumstances or another recognized exception. Payton, 445 U.S. at 587-89, 100 S.Ct. 1371. As a general matter, these requirements apply to all searches and seizures investigating criminal activity conducted under official sanction, not just police officers. Camara v. Municipal Court, 387 U.S. 523, 530-31, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The text of the Fourth Amendment makes no distinctions, instead invoking a- generalized “right of the people to be secure ... against unreasonable searches and seizures.” U.S. Const, amend. IV. For this reason, “the presumption appears to be that any state officer should operate with the default understanding that the Fourth Amendment applies to her actions, unless a specific exception to the requirements of the Fourth Amendment has been found to apply.” Andrews, 700 F.3d at 859.
The dissent attempts to rebut this presumption by listing a series of cases that consider various issues relating to the Fourth Amendment, including our recent decision in Andrews, where we held that the law on warrantless entries by social workers into the home for the purpose of investigation was unsettled in our circuit at the time of the social workers’ conduct in that case. Id. at 862-63. Andrews, however, relied primarily on an ambiguous *699 holding in Jordan, an unpublished 2005 case that addressed the same issue present in Andrews. More important for our purposes, though, is that while Andrews addressed the warrantless entry of social workers into homes, our case at bar involves the warrantless removal of children from their homes, an area of Fourth Amendment law that is not tainted by the same “lack of clarity” present in Andrews. Id. at 863. In fact, “it is core Fourth Amendment doctrine that a seizure without consent or a warrant is a ‘reasonable’ seizure if it is justified by ‘exigent circumstances.’ ” Tenenbaum v. Williams, 193 F.3d 581, 605 (2d Cir.1999). While there certainly remain unresolved issues relating to the Fourth Amendment, as noted by the dissent,[5] the issue at hand — whether a government official can seize children from their homes without a warrant or exigent circumstances — is simply not one of them. See Hagans v. Franklin Cnty. Sheriff’s Office, 695 F.3d 505, 508 (6th Cir.2012) (explaining that a court must “carefully define the right”).
In sum, there is an absence of pre-2002 case law specifically mentioning social workers, which under our binding precedent is insufficient to upset the presumption that all government searches and seizures are subject to the strictures of the Fourth Amendment.[6] We thus agree with the district court that at the time of the social workers’ actions, it was clearly established that Fourth Amendment warrant requirements, including the exigent-circumstances exception, apply to the removal of children from their homes by social workers.
Concerning the Fourteenth Amendment due-process right, we estab *700 lished in Doe that in the context of child removal, due process requires, among other things, that “parents be given notice prior to the removal of the child ... stating the reasons for the removal ... [and that] [t]he parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf.” 706 F.2d at 990. The district court, relying on Doe, determined that “[n]o reasonable social worker could conclude that the law permitted her to remove a child without notice or a pre-deprivation hearing where there was no emergency.” R. 132 (Order at 49) (Page ID # 549). On appeal, the social workers argue that Doe establishes the rights of parents who are facing a separation from their children, but does not establish the rights of a child. Appellants Br. at 26-27. This argument fails, though, as the Supreme Court has described the due-process right as one that applies to both children and parents: “At the fact-finding, the State cannot presume that a child and his parents are adversaries.... [U]ntil the state proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship.” Santosky v. Kramer, 455 U.S. 745, 760, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); see also Teels v. Cuyahoga Cnty., 460 Fed.Appx. 498, 501 (6th Cir.2012) (“‘The Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship.’ ”) (alteration omitted) (quoting Kottmyer v. Maas, 436 F.3d 684, 689 (6th Cir.2006)). The district court did not err in concluding that the due-process right at issue was clearly established in 2002.
C. Constitutionality of Ohio Revised Code § 2151.31(A)(6)
Contrary to the dissent’s suggestion, Ohio Revised Code § 2151.31(A)(6) is simply not relevant to this case. As an initial matter, a review of the evidence shows that the social workers acted pursuant to § 2151.31(A)(3) rather than § 2151.31(A)(6).[7] The TEC Order plainly states that Campbell-Ponstingle, Camer *701 on, and the assistant prosecuting attorney authorized the removal of the children under § 2151.31(A)(3). R. 121-9 (TEC Order at 1) (Page ID # 330) (“Authorizing the Taking of Child(ren) into Custody Ohio Revised Code Section 5153.16(A)(7) and 2151.31(A)(3).”). Additionally, when Campbell-Ponstingle filed the complaint for abuse, neglect, and temporary custody, she stated as follows: “The children were removed on March 26, 2002 pursuant to Ohio Revised Code Sections 5153.16(A)(7) and 2151.31(A)(3).” R. 121-11 (Compl. at 1) (Page ID # 332) (emphasis omitted). Finally, the magistrate found probable cause to remove the children under § 2151.31(A)(3): “Based upon the abové testimony and/or stipulations, the Magistrate finds that there ... is ... probable cause for the removal of the ehild(ren) pursuant to R. C.... 2151.31(A)(3)(b) [and] 2151.31(A)(3)(c).” R. 121-10 (Probable Cause Worksheet) (Page ID # 331) (emphasis omitted); R. 121-14 (Magistrate Order at 1) (Page ID # 340) (same). All of the evidence before us illustrates that the social workers believed there were exigent circumstances pursuant to § 2151.31(A)(3).[8] There is no evidence that the social workers in this case entertained § 2151.31(A)(6) as a possible basis for removal at any point in the discussions or proceedings.
More significantly, neither the TEC Order; the complaint for abuse, neglect, and temporary custody; nor the magistrate order — all of which are standardized forms— includes § 2151.31(A)(6) as a potential basis for an emergency removal.[9] See, e.g., Denton v. Rievley, 353 Fed.Appx. 1, 6 (6th Cir.2009) (“Even if compliance with a state statute generally renders an officer’s conduct more reasonable, this particular statute ... is not necessarily applicable to the case at hand.”).[10] In other words, there is *702 no evidence in the record before us that social workers or magistrates would ever rely on § 2151.31(A)(6) to support a warrantless removal of children from their home, let alone that they did- so here.[11] Eager to strike down § 2151.31(A)(6), the dissent glosses over this point, providing no support for its contention that § 2151.31(A)(6) is an emergency-removal provision or that any social worker has ever used § 2151.31(A)(6) to remove a child from her home without a warrant. To the contrary, Ohio courts employ § 2151.31(A)(3) in emergency-removal cases. See, e.g., In re C.F., 113 Ohio St.3d 73, 862 N.E.2d 816, 818 (2007) (citing § 2151.31(A)(3)(b)); In re Ridenour, Nos. 2003-L-146, 2003-L-147, 2003-L-148, 2004 WL 834579, at *1 (Ohio Ct.App. Apr. 16, 2004) (citing § 2151.31(A)(3)(b)); In re Anthony G., Nos. WD-01-048, WD-01-049, WD-01-050, WD-01-051, 2002 WL 360706, at *1 (Ohio Ct.App. Mar. 6, 2002) (citing § 2151.31(A)(3)); Wade v. Director, Cuyahoga Cnty. Dep’t of Children & Fam. Servs., No. 76752, 1999 WL 961516, at *1 (Ohio Ct.App. Oct. 15, 1999) (citing § 2151.31(A)(3)(b) and (A)(3)(c)). Our review of Ohio case law revealed no such pattern with respect to § 2151.31(A)(6). Indeed, we could not find even one instance of its use.
The social workers acted pursuant to § 2151.31(A)(3), an Ohio statute that required exigency, and they believed that such exigency was apparent. That they may have unreasonably evaluated whether exigent circumstances existed does not justify an eleventh-hour attempt to avoid liability- by introducing a distinct statutory provision of no relevance to the inquiry at hand. The constitutionality of § 2151.31(A)(6) is simply not before us, and we decline to strike down a state statute based wholly on its proximity to the provision in the Ohio Revised Code at issue. We therefore AFFIRM the district court’s denial of qualified immunity to the social workers.
VI. CONCLUSION
For the reasons stated, we AFFIRM the district court’s denial in part of the social workers’ absolute-immunity motion and its denial of the social workers’ qualified-immunity motion. We REMAND for further proceedings.

. The dissent relies on background information, much of which occurred years prior to the incident at hand, without establishing that the social workers were aware of this information at the time that they made their decision to remove the children or that there was any credible threat of these incidents recurring in 2002. In evaluating exigency, however, we must look to the information that was known to the social workers on March 26, 2002, so that we can evaluate whether "an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed.” Ewolski v. City of Brunswick, 287 F.3d 492, 501 (6th Cir.2002).

. The dissent’s assertion that "the meeting was the first time many of the relevant actors were in the same room — and as a result the shared information could reasonably have had a crystallizing effect on the social workers” was not articulated by the social workers in their briefs. Dissent at 709.

. The dissent cannot escape the binding precedent of our court by choosing to label it as dicta. We have held in numerous published opinions, in the context of qualified immunity and others, that pendent appellate jurisdiction allows "a court of appeals ..., in its discretion, [to] exercise jurisdiction over issues that are not independently appealable when those issues are inextricably intertwined with matters over which the appellate court properly and independently has jurisdiction.” Farm Labor Org. Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 549 (6th Cir.2002) (internal quotation marks omitted); see also, e.g., Martin v. City of Broadview Heights, 712 F.3d 951, 963 (6th Cir.2013); Lowe v. Hamilton Cnty. Dep’t of Job &. Family Servs., 610 F.3d 321, 323-24 (6th Cir.2010); Wedgewood Ltd. P’ship I v. Twp. of Liberty, 610 F.3d 340, 348 (6th Cir.2010); O’Bryan v. Holy See, 556 F.3d 361, 377 n. 7 (6th Cir.2009); Meals v. City of Memphis, 493 F.3d 720, 731 (6th Cir.2007). And we are not alone in reaching this conclusion. In fact, every other circuit has similarly described pendent appellate jurisdiction as a discretionary doctrine. See, e.g., Orenshteyn v. Citrix Sys., Inc., 691 F.3d 1356, 1358-63 (Fed.Cir.2012); Jamie S. v. Milwaukee Pub. Sch., 668 F.3d 481, 492 (7th Cir.2012); Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1147-48 (10th Cir.2011); Invista S.A.R.L. v. *698 Rhodia, S.A., 625 F.3d 75, 88 (3d Cir.2010); Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp., 603 F.3d 23, 28 n. 4 (2d Cir.2010); Mueller v. Auker, 576 F.3d 979, 990 (9th Cir.2009); Byrum v. Landreth, 566 F.3d 442, 449-50 (5th Cir.2009); Dible v. Scholl, 506 F.3d 1106, 1109 (8th Cir.2007); Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin., 489 F.3d 1279, 1288 (D.C. Cir.2007); Rux v. Republic of Sudan, 461 F.3d 461, 475 (4th Cir.2006); Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1335 (11th Cir.1999); Camilo-Robles v. Hoyos, 151 F.3d 1, 10 n. 9 (1st Cir.1998). Moreover, commentators on the subject have done the same. See, e.g., Joan Steinman, The Scope of Appellate Jurisdiction: Pendent Appellate Jurisdiction Before and After Swint, 49 Hastings L.J. 1337, 1482 (March 1998) (explaining that discretion should inform a court’s decision whether to exercise pendent appellate jurisdiction).

. Contrary to the dissent’s suggestion otherwise, whether a plaintiff decides to protest a purported constitutional violation during the incident has no bearing on the state of the law at the time of the incident. It would be radical indeed if a plaintiff were required to object contemporaneously to the violation of his constitutional rights in order to make a showing that these rights were clearly established at the time of the incident.

. The majority of cases cited by the dissent in support of its assertion that Fourth Amendment law is unsettled with respect to removing children from a home without a warrant address legal theories that are not at issue in this case. For example, the statements quoted by the dissent from Hatch v. Department for Children, Youth & Their Families, 274 F.3d 12, 20-22 (1st Cir.2001), Frazier v. Bailey, 957 F.2d 920, 931 (1st Cir.1992), and Croft v. Westmoreland County Children & Youth Services, 103 F.3d 1123, 1125-26 (3d Cir. 1997), concern Fourteenth Amendment due-process rights rather than the Fourth Amendment exigency requirement. Similarly, the statement that the law was unsettled in Gates v. Texas Department of Protective & Regulatory Services, 537 F.3d 404, 426 (5th Cir.2008), addressed entry into the home rather than removal of the children, as asserted by the dissent.
Additionally, the dissent omits critical aspects of other out-of-circuit cases. In Mueller v. Auker, 700 F.3d 1180 (9th Cir.2012), for example, the Ninth Circuit considered "special needs” in the context of necessary medical procedures in an emergency room rather than the removal of children from the home under the guise of exigency, as described by the dissent. Id. at 1189. The dissent also omits a crucial statement in Roe v. Texas Department of Protective & Regulatory Services, 299 F.3d 395 (5th Cir.2002), where the Fifth Circuit remarked, “[w]e have held that the Fourth Amendment regulates social workers' civil investigations.” Id. at 401. Finally, the dissent omits the following qualifying sentence immediately following the quoted passage in Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir.2000): "While we agree that that is generally the case, as noted above, some governmental actions are so clearly beyond the pale that a reasonable person should have known of their unconstitutionality even without a closely analogous case.” Id. at 1023.

. We do not discount the dissent's concern with the delicate balance between a child’s safety and the potential harm of a premature or unwarranted removal. Rather, we agree with the Second Circuit that "if CWA caseworkers have special needs, we do not think that freedom from ever having to obtain a predeprivation court order is among them. Caseworkers can effectively protect children without being excused from whenever practicable, obtaining advance judicial approval of searches and seizures.” Tenenbaum, 193 F.3d at 604 (internal quotation marks and alterations omitted).

. Section 2151.31(A) provides as follows:
(A) A child may be taken into custody in any of the following ways:
(3) By a law enforcement officer or duly
authorized officer of the court when any of the following conditions are present:
(a) There are reasonable grounds to believe that the child is suffering from illness or injury and is not receiving proper care, as described in section 2151.03 of the Revised Code, and the child's removal is necessary to prevent immediate or threatened physical or emotional harm;
(b) There are reasonable grounds to believe that the child is in immediate danger from the child’s surroundings and that the child's removal is necessary to prevent immediate or threatened physical or emotional harm;
(c) There are reasonable grounds to believe that a parent, guardian, custodian, or other household member of the child’s household has abused or neglected another child in the household and to believe that the child is in danger of immediate or threatened physical or emotional harm from that person.
(6) By a law enforcement officer or duly authorized officer of the court when any of the following apply;
(a) There are reasonable grounds to believe that the conduct, conditions, or surroundings of the child are endangering the health, welfare, or safety of the child.
(b) A complaint has been filed with respect to the child under section 2151.27 or 2152.021 of the Revised Code or the child has been indicted under division (A) of section 2152.13 of the Revised Code or charged by information as described in that section and there are reasonable grounds to believe that the child may abscond or be removed from the jurisdiction of the court.
(c) The child is required to appear in court and there are reasonable grounds to believe that the child will not be brought before the court when required.
(d) There are reasonable grounds to believe that the child committed a delinquent act and that taking the child into custody is *701 necessary to protect the public interest and safety.
Ohio Rev.Code Ann. § 2151.31(A).

. The dissent’s suggestion that the social workers were blindsided by the exigency requirement ignores the fact that they cited § 2151.31(A)(3) multiple times during the proceedings and discussed the need for exigent circumstances in their depositions. While we might imagine a situation in which social workers would not have been aware of such a requirement, it is inapposite to make such an argument here.

. Additionally, the 1988 standing order expressly refers to § 2151.31(A)(3), (C), and (G): "all direct service social workers ... are duly authorized by this Court to take into custody and provide temporary emergency care for a child deemed to be in need of such care under the circumstances provided in Ohio Revised Code Sections 2151.31(A)(3), (C) and (G) and Rule 6 of the Ohio Rules of Juvenile Procedure." R. 121-4 (1988 Order at 2) (Page ID # 258). The initial standing order thus clearly envisioned authorizing temporary emergency removals under those provisions enumerated.

.The dissent relies on Roska v. Peterson, 328 F.3d 1230 (10th Cir.2003), for the proposition that the mere existence of § 2151.31(A)(6) supports the conclusion that the social workers acted reasonably. However, Roska’s reasoning contradicts such a determination. In Roska, "the district court concluded that defendants were entitled to qualified immunity, based on defendants’ reliance on Utah Code Ann. § 78-3a-301.” Id. at 1252. The Tenth Circuit disagreed, explaining that "[§ ] 78-3a-301 does not authorize removal absent pre-deprivation procedures.” Id. In other words, "reliance on section 78-3a-301 alone could not render the defendants’ conduct objectively reasonable, insofar as the statute did not authorize the unconstitutional conduct in question." Id. The Tenth Circuit , then declined to address a second statutory provision because, among other reasons, "the appropriate inquiry is not whether a reasonable state officer could have concluded that the statute authorized the unconstitutional conduct in question.” Id. at 1253 (emphasis added). "Rather, a court must consider whether reliance on the statute rendered the officer’s conduct ‘objectively reasonable.' ” Id. The discussion in Roska thus underscores the importance of considering only those statutes relevant to the viola *702 tion at issue and to the actions of the defendants.

. Moreover, we decline to accept the dissent's assertion that § 2151.31(A)(6) authorized the social workers’ conduct in this case. Dissent at 704. Without citations to the record or to Ohio law, we remain unpersuaded that § 2151.31(A)(6) is more applicable than § 2151.31(A)(3), -the provision cited by the social workers at the time of the removal. Notably, the portion of the dissent’s opinion assessing whether the social workers violated the children’s Fourth Amendment rights considers only exigency; there is no mention of the reasonable-grounds exception that the dissent suggests purportedly authorized the removal of the children in this case.