NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0041n.06

No. 14-3102

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 22, 2016
DEBORAH S. HUNT, Clerk

NANCY M. MCLAUGHLIN,                           )
                                               )
        Plaintiff-Appellant,                   )
                                               )
                                               )    ON   APPEAL   FROM   THE
v.                                             )    UNITED  STATES  DISTRICT
                                               )    COURT     FOR     THE
CNX GAS COMPANY, LLC,                          )    NORTHERN  DISTRICT   OF
                                               )    OHIO
        Defendant-Appellee.                    )
                                               )
                                               )

BEFORE:    SILER, GILMAN, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, CIRCUIT JUDGE.** Plaintiff Nancy McLaughlin owns the surface rights to a 143-acre tract of land in Ohio. Long before McLaughlin acquired the property, Consolidation Coal Company had severed the oil and gas rights. Seventeen years after McLaughlin bought the surface-rights, Consolidation conveyed its oil and gas rights to CNX Gas Company, LLC. McLaughlin then filed this action to quiet title, alleging that Consolidation had abandoned its oil and gas rights under Ohio's Dormant Mineral Act (ODMA) and that the oil and gas rights had therefore merged with McLaughlin's surface rights. CNX removed and filed a motion for judgment on the pleadings. It argued that the oil and gas rights did not vest in McLaughlin because the rights had been leased within the statutory twenty-year period, thus preserving the interest under the ODMA. The district court granted CNX's motion. McLaughlin appealed, arguing that the district court improperly applied Ohio oil and gas law. We ordered

that the case be held in abeyance pending the decision of the Supreme Court of Ohio in *Chesapeake Exploration, L.L.C. et al., v. Buell et al.*, No. 2014-0067, 2015 WL 6742183 (Ohio Nov. 5, 2015). Because the oil and gas lease between Consolidation and CNX was a title transaction under the ODMA and therefore prevented the mineral interests from vesting in McLaughlin, we now affirm the district court's dismissal of the action.

**I.**

The facts are undisputed. In 1957, Consolidation Coal Company bought 143 acres of land in Carroll County, Ohio. This purchase included all mineral rights to the land. Twenty years later, Consolidation Coal gave Republic Steel Corporation an option to lease the oil and gas rights in the land. Republic Steel exercised its option and leased the rights in 1979.[1] In 1984, Republic Steel became LTV Steel Company, Inc., which continued to lease the oil and gas rights.

During the term of the lease, Consolidation conveyed the land[2] to Conoco, Inc., specifically reserving its oil and gas rights. This transaction severed the oil and gas rights from the rest of the property rights. After the conveyance to Conoco, LTV Steel assigned all of its rights under the oil and gas lease to Carless Resources, Inc. Three years later, Conoco conveyed the land to DuPont Energy Coal Holdings, which then conveyed the land to International Environmental Services, Inc. Both deeds expressly stated that the oil and gas rights were reserved.

On July 8, 1992, Kelt Resources, Inc. (formerly Carless Resources) executed and recorded in Carroll County a "Partial Release of Oil and Gas Lease." In this document, Kelt

---

[1] It is not clear from the document that the land at issue was covered by the lease—Exhibit A, which is supposed to describe the land, is missing. McLaughlin does not contest this fact and appears to accept that Consolidation leased its oil and gas rights in the land according to the document's terms.

[2] For purposes of this opinion, "land" encompasses all property rights except the oil and gas rights.

agreed to "release, relinquish, and surrender all of its right, title and interest in and to a portion of that Oil and Gas Lease made and entered into between Consolidation . . . and Republic."

Roughly two years later, Ronald and Nancy McLaughlin bought the 143-acre tract of land at a sheriff's sale; International Environmental Services was delinquent on its taxes.[3] On September 29, 2011, seventeen years after the sheriff's sale, Consolidation conveyed its oil and gas rights to CNX.

McLaughlin filed this action seeking declaratory relief and to quiet title in state court. She alleged that the severed oil and gas rights merged with the surface rights under the ODMA and that she—not CNX—is the exclusive owner of the oil and gas rights. CNX removed to federal court on the basis of diversity jurisdiction. CNX then filed a motion for judgment on the pleadings, arguing that the oil and gas rights were not abandoned under the ODMA. The district court agreed with CNX and dismissed the case. McLaughlin appealed, and we held the case in abeyance pending the decision of the Supreme Court of Ohio in *Buell*, 2015 WL 6742183.

**II.**

We apply the same *de novo* standard of review employed for a motion to dismiss under Rule 12(b)(6) to a district court's decision regarding a motion for judgment on the pleadings. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must

---

[3] After Ronald's death, Nancy assigned her interest in the land to herself as Trustee of the Nancy M. McLaughlin Living Trust.

plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Under Federal Rule of Civil Procedure 10(c), we treat copies of written instruments attached to a pleading as part of the pleading itself. Fed. R. Civ. P. 10(c). We may also consider documents that a defendant attaches to a motion if the documents "are referred to in the plaintiff's complaint and are central to her claims" without converting the motion to one for summary judgment. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Likewise, we may consider matters of public record in deciding a motion for judgment on the pleadings. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

## III.

The ODMA provides that, in certain situations, severed mineral interests can be declared abandoned and vested in the owner of the surface rights. *See* Ohio Rev. Code § 5301.56. The Act is primarily concerned with the "use" of mineral rights. Matthew W. Warnock, *Baldwin's Ohio Practice*, *Ohio Real Estate Law* § 47.3. According to the ODMA, mineral interests are not abandoned if, within a twenty-year time period, one or more of the following occurred:

(a) *The mineral interest has been the subject of a title transaction* that has been filed or recorded in the office of the county recorder of the county in which the lands are located.

(b) There has been actual production or withdrawal of minerals by the holder from the lands, from lands covered by a lease to which the mineral interest is subject, from a mine a portion of which is located beneath the lands, or, in the case of oil or gas, from lands pooled, unitized, or included in unit operations . . . .

(c) The mineral interest has been used in underground gas storage operations by the holder.

(d) A drilling or mining permit has been issued to the holder . . . .

(e) A claim to preserve the mineral interest has been filed . . . .

(f) In the case of a separated mineral interest, a separately listed tax parcel number has been created for the mineral interest . . . .

Ohio Rev. Code § 5301.56(B)(3)(a)–(f) (emphasis added); *see also id.* § 5301.56(B)(1)(C)(I)–(VI) (1989). Conversely, if none of the above applies and the mineral interest is not held by the Government and is not an interest in coal, the interest shall be "deemed abandoned." *Id.* § 5301.56(B)(1)–(3); *see also* Ohio Rev. Code § 5301.56(B)(1)(A)–(C) (1989).

There are two versions of the ODMA at issue here.[4] The first, effective in 1989, provided that once the mineral interest was deemed abandoned, the severed mineral rights automatically vested in the owner of the surface rights. Ohio Rev. Code § 5301.56(B)(1) (1989). In 2006, the Ohio legislature amended the Act to require the owner of the surface rights to serve notice and file a published affidavit of abandonment "[b]efore the mineral interest becomes vested." Ohio Rev. Code § 5301.56(E). These notice provisions apply prospectively. *See Walker v. Shondrick-Nau*, No. 13-402, 2014 WL 1407942, at *6 (Ohio Ct. App. April 3, 2014) ("[A]lthough [the ODMA] was amended in 2006, this amendment would not have affected any 'validation, cure, right, privilege, obligation, or liability previously acquired.'"). Courts must first ask whether the mineral rights were abandoned and vested in the owner of the surface rights under the 1989 version and, if not, look to the 2006 version. *See id.* at *7.

In this case, the particular version of the Act does not matter[5] because the dispositive issue under either version is whether oil and gas leases are "title transactions" under the ODMA.

---

[4] The ODMA was amended again in 2013, but none of the amendments affect the issues in this case. 2013 Ohio Laws File 41 § 5301.56.

[5] Under the 1989 version of the ODMA, a savings event must have occurred "[w]ithin the preceding twenty years." Ohio Rev. Code § 5301.56(B)(1)(C) (1989). The Ohio Court of Appeals has interpreted this provision to provide for a fixed look-back period—from March 22, 1969 to March 22, 1992, the effective date of the Act plus a

If they are, the oil and gas rights are still severed and belong to CNX. If not, the oil and gas rights merged with the surface interests under the ODMA, and McLaughlin owns the full bundle of property rights.

Because oil and gas leases are "title transactions" under the ODMA, Consolidation has not abandoned its oil and gas rights in the parcel at issue. Though the term "title transaction" is not defined in the ODMA, Ohio Rev. Code § 5301.56, it is defined in the Marketable Title Act as "any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage." Ohio Rev. Code § 5301.47(F). This definition controls under both versions of the ODMA. *See id.* § 5301.47 (stating that the definitions in section 5301.47 apply to "sections 5301.47 to 5301.56"); *see also Dodd v. Croskey*, No. 12-HA-6, 2013 WL 5437365, at *8 (Ohio Ct. App. Sept. 23, 2013) (applying the Marketable Title Act's definition of "title transaction" to the ODMA). The Ohio Supreme Court has recently held that oil and gas leases qualify as "title transactions" under this definition. *Buell*, 2015 WL 6742183, at *6–13. Therefore, the oil and gas lease at issue here is a "title transaction" for the purposes of the ODMA and prevents the mineral interests from vesting in McLaughlin.

## IV.

McLaughlin also argues that she acquired title to the mineral interests through the Sheriff's deed because the deed did not expressly mention a severance of the mineral rights.

---

three-year statutory grace period. *See Walker*, 2014 WL 1407942, at *6–7; *see also Riddel v. Layman*, No. 94-114, 1995 WL 498812, at *3 (Ohio Ct. App. July 10, 1995) (applying the same fixed look-back period). The 1979 Memorandum of Lease falls within this time period.

Under the 2006 version, the court counts back twenty years from the date notice was given. Ohio Rev. Code § 5301.56(B)(3). McLaughlin alleges that she gave notice in 2010. CNX asserts that the 1992 Release of Oil and Gas Lease operates as a title transaction within this period. The analysis does not change in this context because a release is simply the inverse of a lease.

(Appellant Br. at 30–31.) But this argument ignores Ohio law that "one cannot convey that which one does not own." *Smith v. Newell*, No. 87697, 2007 WL 64696, at *5 (Ohio Ct. App. Jan. 11, 2007); *see also Frate v. Rimenik*, 152 N.E. 14, 20–21 (Ohio 1926). McLaughlin bought the property at a tax sale based on the deficiency of International Environmental Services, which did not own the oil and gas rights. Therefore, the Sheriff could not have conveyed title to those rights.

McLaughlin's argument that the tax sale extinguished Consolidation's oil and gas rights similarly fails. McLaughlin does not point to any authority *requiring* Consolidation to obtain a separate tax number for its mineral interests or risk losing the interests. In effect, McLaughlin is trying to invent a new method of abandonment. But Ohio law says the exact opposite:

> [T]he failure of the owners of mineral rights, after severance from the surface ownership, to cause the same to be listed and to pay taxes thereon, or if taxing officials consider such mineral rights of no taxable value or fail to levy taxes thereon, such situations will not bar the owner of the mineral rights from exercising his rights of ownership.

*Yoss v. Markley*, 68 N.E.2d 399, 402 (Ohio Ct. C.P. 1946) ("The fact that taxing authorities failed to levy taxes against a separate estate carved out of the same fee, which is a matter of record, will not give any additional property right to the owner of another separate estate in the same fee."). Furthermore, none of the cases cited by McLaughlin involved presently severed estates and are therefore inapplicable. *See Howard v. Dor El Realty Co.*, 253 N.E.2d 304, 307 (Ohio Ct. App. 1969) (holding that purchasers at a tax sale could not be deprived of their right to the property because the public officials mistakenly omitted the name of one of the joint-owners); *Slaughter v. Fitzgerald*, 31 N.E.2d 744, 750–51 (Ohio Ct. App. 1939) (holding that a tax sale held on land owned in a life estate extinguished the heir's contingent interest in the property because the heirs "had no present interest"); *Application of Nat'l Tube Co.*, 98 N.E.2d

- 7 -

78, 94–95 (Ohio B.T.A. 1950) (discussing appropriate back taxes and penalties for furnaces and other structures on a property).

## V.

For the above reasons, we affirm the district court's dismissal of McLaughlin's action.