**NOT RECOMMENDED FOR PUBLICATION**
File Name: 21a0165n.06

Case No. 20-5422

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 26, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| WENDY HANCOCK, individually and as next friend for B.B., | ) ) ) | |
| *Plaintiff-Appellant,* | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) | |
| DEANDRA MILLER, et al., | ) ) | |
| *Defendants-Appellees.* | ) ) | **OPINION** |

**BEFORE: BATCHELDER, STRANCH, and NALBANDIAN, Circuit Judges.**

**NALBANDIAN, Circuit Judge**. Wendy Hancock's thirty-month dispute with the Tennessee Department of Children's Services ("DCS") culminates in this appeal. Hancock sued seventeen defendants for violating her and her daughter's rights while revoking Hancock's custody of her children. The district court dismissed her complaint. Hancock appeals select claims, but finding no error, we **AFFIRM**.

## I. BACKGROUND

Wendy Hancock lived in Tennessee with her teenage son and twelve-year-old "B.B.," her daughter. August 2018 was an eventful month for the Hancock household. Hancock filed an unruly petition against her son in juvenile court. Meanwhile, he called the police to their home, and the officers found drug paraphernalia in his room.

The next day, the son left home after arguing with Hancock, and Hancock reported him missing to the police. Unbeknownst to Hancock, the son's father delivered the son to DCS custody. While there, the son complained of verbal and physical mistreatment, stated he feared going home, showed evidence of abuse, and reported his mother's drug and alcohol use.

The same day that her son lodged his complaints with DCS, police called Hancock and told her to come to the police station to find out about her son. When Hancock did not show up, the police obtained criminal warrants against Hancock for assault and contributing to a minor's delinquency.

In the wake of these events, DCS worker Deandra Miller petitioned the Juvenile Court for an *ex parte* order against Hancock, alleging that Hancock dealt and abused drugs and physically abused her children. The initial Juvenile Court judge assigned to the petition, Judge Bratton Hale Cook, refused to address it because of his familiarity with Hancock. Under the Tennessee Supreme Court's "Standing Order for the Designation of Substitute Judge," the petition was referred to Judge Michael Collins. Judge Collins issued an *ex parte* order granting DCS immediate temporary custody of the children ("*ex parte* order" or "EPO").

But Hancock and B.B. were missing. After two days, Detective James Cornelius retrieved images from Facebook and broadcast them on the national child alert system. He also "pinged" Hancock's cell phone to determine her location. Police arrested Hancock the next day and took B.B. into DCS custody. Detective James Cornelius and Lieutenant Matthew Holmes and interrogated Hancock without

2

reading *Miranda* warnings. Hancock alleges that the government used her statements from this interrogation against her in juvenile and criminal proceedings.

The government charged Hancock with assault and contributing to the delinquency of a minor. DCS placed Hancock's son and B.B. in foster care and arranged for them to receive the HPV vaccine. Hancock entered a "best interest" guilty plea to the contributing to delinquency charge, and the state dismissed the assault charge. And in March 2019, after a three-day hearing, a judge found Hancock's children dependent and neglected. Hancock elected for probation and a supervised parenting plan to regain custody of her children. DCS returned her children home in June.

Hancock sued seventeen defendants based on her belief that the state's employees and the state court had violated her rights in taking custody of her children. She alleged state-law violations as well as federal claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. She sought damages and a declaratory judgment. The defendants moved to dismiss all of Hancock's claims, which the district court did. It concluded that it lacked jurisdiction over Hancock's federal claims arising from the *ex parte* order under the *Rooker–Feldman* doctrine. And it dismissed the rest of the federal claims on substantive or immunity grounds. Having dismissed her federal claims, it declined to exercise supplemental jurisdiction over the state law claims. Hancock now appeals the dismissal of some of her claims as to four of the defendants.

## II. DISCUSSION

Hancock argues that the district court made several errors. First, she claims that the district court erred when it denied three motions to exclude and took judicial notice of two state court orders and a DCS document. Second, she argues that her constitutional claims challenging actions taken under the EPO are not barred by the *Rooker–Feldman* doctrine. Third, she asserts several claims against DCS worker Deandra Miller. And finally, she asserts Fourth and Fifth Amendment claims against Detective Cornelius and Lieutenant Holmes for their interrogation without *Miranda* warnings and for pinging her cell phone without a warrant. We address and reject each of her arguments below.

We review a Rule 12(b)(6) dismissal de novo, allowing Plaintiff's claims to proceed only if they "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks removed) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations," but "[t]hreadbare recitals of the elements of a cause of action" or "a legal conclusion couched as a factual allegation" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555); *Courser v. Allard*, 969 F.3d 604, 615 (6th Cir. 2020).

### A. Motions to Exclude

Hancock's first argument is that the district court erred in denying three motions that she made to exclude various court records. She argues that judicial

notice of these documents was inappropriate under Federal Rule of Evidence 201, which permits courts to take notice of certain facts even on a motion to dismiss. We reject her arguments because each of the documents qualified under FRE 201.

Rule 201 outlines the requirements for judicial notice of adjudicative facts. It permits courts to take notice of "a fact that is not subject to reasonable dispute" because it either "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this rule and relevant case law, courts take notice of "developments in related proceedings in other courts of record." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2012) (cleaned up).[1] "Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (citation omitted).

Hancock argues that the district court erred in denying her motion to exclude a juvenile court order, a "permanency plan" by the Department of Children's Services that was filed with the juvenile court, and the Standing Order for the Designation of Substitute Judges by the Tennessee Supreme Court.

---

[1] A juvenile court in Tennessee is a court of record. *See* Tenn. Code Ann. § 37-1-159(a); *In re S.L.M.*, 207 S.W.3d 288, 296 (Tenn. Ct. App. 2006).

The juvenile court order plainly meets the requirements of Rule 201. "Judicial records are a source of 'reasonably indisputable accuracy' when they record some judicial action such as dismissing an action, granting a motion, or finding a fact." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (quoting 21B Charles Alan Wright et al., *Federal Practice and Procedure* § 5106.4 (2d ed. 2005)).

Hancock posits that the juvenile court order is not appropriate for judicial notice because it is not a "final order" and that the order "is of no force or effect" under Tennessee law because it was "negated by the de novo appeal." (Appellant's Br. at 16.) Her argument fails on its own terms. Tennessee law permits appeal only of a "final order or judgment." § 37-1-159(a). And she did appeal, so the order must have been final.[2] And in any event, she does not explain how the order not being "final" would affect how we would apply Rule 201.

Hancock also argues that the order is not a "public record" because it is confidential, and she says that it is not central to her claims. These arguments do not address whether judicial notice was appropriate or whether the existence of the order "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Instead, Hancock's arguments go to

---

[2] Hancock seems to believe that "final" means that the order is the final word in the matter. This colloquial sense of the term "final" differs from the legal term "final judgment" for appeal. *See Hantz Fin. Servs., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 664 F. App'x 452, 459 (6th Cir. 2016) ("Accordingly, as a legal term of art, 'final judgment' virtually always designates the judgment by a court that determines all the rights and obligations of the parties in a case *so that it can be appealed*—not a judgment that has been resolved after appeal.")

whether admitting the order converted the 12(b)(6) motion to dismiss into a summary judgment motion. This requires different analysis.

Considering the order was proper and did not convert the motion to dismiss into a motion for summary judgment. When deciding a motion to dismiss, a court ordinarily cannot consider evidence outside the pleadings. Fed. R. Civ. P. 12(d). If a party presents such evidence and the court does not exclude it, then the court must treat the motion to dismiss as a summary judgment motion and allow appropriate discovery. *Id.* But a court deciding a motion to dismiss may consider "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005); *see also McLaughlin v. CNX Gas Co., LLC*, 639 F. App'x 296, 298 (6th Cir. 2016) ("We may also consider documents that a defendant attaches to a motion if the documents 'are referred to in the plaintiff's complaint and are central to her claims' without converting the motion to one for summary judgment.") (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). Because a juvenile court order is appropriate for judicial notice, the district court could consider it to demonstrate the adjudicative fact that the order was issued and what it said—though not for the truth of the facts asserted— without converting the 12(b)(6) into a summary judgment motion. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014).

We look next to the permanency plan. Hancock repeats her argument that the document is not appropriate for judicial notice because it is not a public record or

central to her claims. Again, these arguments do not address judicial notice, but whether the document is evidence that converts a motion to dismiss into a motion for summary judgment. And at any rate, Hancock identifies no support for the notion that confidential court filings are not public records. Indeed, she admits that "court filings in other cases" are appropriate for judicial notice. (Appellant's Br. at 10.)

Finally, we turn to the Standing Order. Hancock argues that the Standing Order is not appropriate for judicial notice because the fact that it provided Judge Collins with authority is subject to reasonable dispute. But this assertion does not contradict the fact that the Standing Order is a public record, as it is an order from the Supreme Court of Tennessee. *See Ferguson*, 681 F.3d at 834. So judicial notice was appropriate.[3]

## B. *Rooker–Feldman*

Hancock challenged the EPO's validity, and she alleged that those who acted under the EPO violated her rights. Because a lower federal court lacks jurisdiction to review a state court order, we affirm the district court's dismissal of claims based on the EPO or its execution. "We review *de novo* a district court's ruling that the *Rooker–Feldman* doctrine deprives the district court of jurisdiction." *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 606 F.3d 301, 308 (6th Cir. 2010).

*Rooker* stated a simple negative implication of 28 U.S.C. § 1257: lower federal courts lack jurisdiction to hear appeals from state court decisions. Only the Supreme

---

[3] Hancock challenges the district court's alleged assumption that the standing order was valid under state law. We need not address this issue since *Rooker–Feldman* applies to Judge Collins' actions, and this allegation would only go to dispute his jurisdiction to issue the order. *See infra*, Section II.B.

Court holds the power to declare a state court decision "null and void." *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 414–16 (1923). Later, the Court clarified that § 1257 does not prevent a party from challenging a state law in federal court. It merely prevents a party from challenging a state court ruling applying that law. *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). It is "a doctrine with only limited application." *Kovacic*, 606 F.3d at 309 (quoting *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006)).

*Rooker–Feldman* invokes the same idea of respect for state courts as preclusion, collateral estoppel, and abstention. But the doctrines are not the same. In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Court held that *Rooker–Feldman* only applies to "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. It does not "override or supplant preclusion doctrine" or otherwise impact existing doctrines on how federal courts defer to state courts. *Id.*

So we work with two important boundaries. First, *Rooker–Feldman* applies only to court orders. *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012). A plaintiff may challenge a summons or a writ of garnishment that a clerk issues without violating *Rooker–Feldman*. *See Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 892–93 (6th Cir. 2020). Second, the doctrine applies when plaintiffs challenge the state court decision, not state law generally. So "alleging error in a state court decision" rouses *Rooker–Feldman*. *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013)

(citation omitted). But challenging a state law or policy prospectively does not. *See Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 674 (6th Cir. 2018). The type of relief requested—whether retrospective or prospective—often reveals which type of claim it is. *Berry*, 688 F.3d at 299–300.

In winnowing would-be *Rooker–Feldman* cases, our Circuit uses the "source of the injury" standard. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). If the state court judgment is the source of the injury, then *Rooker–Feldman* applies. *Id.* But "[i]f there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Lawrence v. Welch*, 531 F.3d 364, 368–69 (6th Cir. 2008) (quoting *McCormick*, 451 F.3d at 393). And just as the relief requested helps to classify the type of claim, the request for relief is also indispensable in determining the source of the injury. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020). On this basis, we have repeatedly declined to apply *Rooker–Feldman* to cases alleging third-party misconduct, even when closely related to a state court proceeding.

But we also follow an important exception—that "if a third party's actions are the product of a state court judgment," then challenging the acts would be to challenge the judgment itself. *McCormick*, 451 F.3d at 394. For example, if election officials refuse to tally ballots because a court order commanded them to exclude the ballots, *Rooker–Feldman* would not allow a suit against the officials. *Id.* (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)).

The district court dismissed all claims arising from the EPO as barred by the *Rooker–Feldman* doctrine. This included:

> (a) Fourth Amendment claims concerning the seizure of the children pursuant to the [EPO]; (b) Fourteenth Amendment procedural due process claims concerning removing the children pursuant to the [EPO] and participating in hearings pursuant to the [EPO]; (c) Fourteenth Amendment substantive due process claims concerning removing and retaining the children pursuant to the [EPO], including a claim based upon the provision of the HPV vaccine to B.B. under the medical treatment provision of the [EPO].

(R. 122, PageID 1021–22.). Hancock challenges each of these holdings.

Hancock argues that *Rooker–Feldman* should not apply to her claims because the EPO no longer has any effect, so she is not asking for relief from the EPO. But her Amended Complaint says otherwise. It states that she is "seeking declaratory judgment on the *ex parte* order and the actions of Judge Michael Collins as follows: That the *ex parte* order . . . violates the Fourteenth Amendment . . . [and] the Fourth Amendment . . . ." (R. 34, PageID 253.) She also argues, "Declaratory relief is appropriate because the *validity* and *enforceability* of said order" is still at issue in her separate criminal proceedings. (*Id*. at 254. (emphasis added)). And she asks for a declaration that the EPO is "void." (*Id*. at 253.) All her claims against Collins reside under the Cause of Action for Declaratory Relief, which requests the district court void the EPO. This is "inviting district court review and rejection of" a state-court order—something we may not do under *Rooker–Feldman. Exxon Mobil,* 544 U.S. at 284. And her appellate briefing rests on the same claims barred by *Rooker–Feldman.*

Because many of Hancock's claims depend on declaring the EPO void, *Rooker–Feldman* analysis is sufficient for resolving several issues. *Rooker–Feldman* effectively blocks all claims against Judge Collins, and we need not address the issue

of judicial immunity or any of the remaining allegations against Judge Collins. Hancock's complaint also reveals that any claim against Miller, James, and Holmes based on the seizure of B.B., removal and retention of her children, and arrest for custodial interference also turn on the validity of the EPO. Hancock does not allege any constitutional injury independent of the EPO, instead alleging that the EPO was the "direct and proximate cause" of these alleged harms. (R. 34, PageID 253.) So these alleged harms were "the product of a state court judgment," not independent third-party actions, and *Rooker–Feldman* bars review. *McCormick*, 451 F.3d at 394.

Hancock also claims that *Rooker–Feldman* does not apply because the EPO was not a final order. But we have held that *Rooker–Feldman* applies to interlocutory orders. *See Pieper v. Am. Arb. Ass'n, Inc.*, 336 F.3d 458 (6th Cir. 2003). After *Exxon Mobile*, there has been some debate among circuit courts about whether *Rooker–Feldman* reaches federal complaints filed *before* the state proceeding is fully complete.[4] But even assuming completion of state court proceedings is the standard,

---

[4] For example, the Eleventh Circuit held in *Nicholson v. Shafe* that *Rooker–Feldman* did not apply if a state court appeal was still pending when the plaintiff filed the federal case. 558 F.3d 1266, 1279 (11th Cir. 2009). That court reasoned that *Exxon Mobil*'s emphasis on limiting *Rooker–Feldman* requires federal courts to apply it in only factually identical situations, down to the detail that the state proceedings and opportunity to appeal in *Rooker* and *Feldman* had ended. *Id.* at 1274–75. *See also Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24–27 (1st Cir. 2005).

But the Fifth Circuit noted that the emphasis on "ended" proceedings "is found not in *Exxon*'s holding but in its description of the *Rooker* and *Feldman* cases." *Houston v. Venneta Queen*, 606 F. App'x 725, 732 (5th Cir. 2015). *Exxon*'s actual holding requires only that the judgment challenged be "rendered before the district court proceedings commenced." *Exxon Mobil*, 544 U.S. at 284. And later Supreme Court precedent emphasized not the ending of all state court proceedings, but effectual "appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006). Our circuit has not decided this question post-*Exxon*. In *Quality Associates*, a panel touched on the question in a footnote, noting that it believed

*Rooker–Feldman* still applies here. The state court dismissed Hancock's case almost two months before she filed her suit in federal court. Because Hancock challenged a state court order and actions that flowed directly from its mandate, the district court had no jurisdiction over these claims.

## C. Claims Against Deandra Miller

Hancock argues that Miller violated her substantive due process rights through her "bad faith investigation which resulted in false statements in order to obtain a removal order." (Appellant's Br. at 56.) She also claims that Miller made false statements in her petition for the EPO, that she started the removal proceedings as retaliation for protected speech and use of an activist attorney, and that she withheld exculpatory evidence when advancing the petition for the EPO.[5] We reject most of these arguments on absolute immunity grounds and one argument for insufficient pleading.

---

*Pieper* had been displaced by *Exxon*, and citing *Nicholson* approvingly. *Quality Assocs., Inc. v. The Procter & Gamble Distrib. LLC*, 949 F.3d 283, 290 n.5 (6th Cir. 2020). But it ultimately found *Rooker–Feldman* inapplicable on different grounds—the state court order at issue was not rendered until after the district court case had commenced, running afoul of *Exxon's* requirement that the judgment challenged be "rendered before the district court proceedings commenced." *Exxon-Mobil*, 544 U.S. at 284.

Our leading post-*Exxon* case, which pre-dated *Quality Associates*, considered applying *Rooker–Feldman* appropriate when the proceedings on the relevant order had "ended," though the case as a whole had three years of proceedings yet to come. *See McCormick*, 451 F.3d at 391, 395; *McCormick v. McCormick,* No. 84-422014-DO (Wayne County Circuit Court). Requiring finality of only the order being effectively appealed may better align with the Supreme Courts guidance and the *Rooker–Feldman* rationale. But we leave that decision for another day.

[5] Hancock also alleged that Miller failed to communicate with Hancock's lawyer when launching the petition and setting a hearing. But Hancock has not alleged that Miller personally had a legal duty to contact Hancock's lawyer. Indeed, in her brief, she diffuses responsibility among different defendants and DCS.

Like prosecutors, social workers have absolute immunity for conduct "intimately associated with the judicial phase of the criminal process." *Kovacic v. Cuyahoga Cty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 694 (6th Cir. 2013) (quoting *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.,* 640 F.3d 716, 724 (6th Cir. 2011)). This includes work as a legal advocate, such as filing legal papers with the courts, appointing guardians *ad litem*, and testifying. *Id.*; *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 422 (6th Cir. 2001). Plaintiffs cannot skirt this bar by alleging malice, corruption, or error. *Kovacic*, 724 F.3d at 694. The immunity is complete.

But administrative duties, investigations, and agency decisions do not fall under the immunity. *Id*. That is, the immunity follows the actions, not the person. *Rippy*, 270 F.3d at 422. In determining whether the action is immune at the dismissal stage, the pleadings are important. Regardless of other possibly viable allegations, the district court must look only at the facts alleged. *See id*. at 423 n.2.

Absolute immunity blocks the claims of bad-faith investigation, false statements, and retaliation because Hancock did not allege that the investigation caused her harm independent of the EPO. In other words, the true harm she alleged was the eventual entry of the EPO, not any particular investigative acts. A plaintiff complaining about a social worker's legal advocacy cannot skirt immunity by presenting her claims as based on the investigation. *See Rippy*, 270 F.3d at 421 (rejecting a claim for improper investigation when the claim really centered on false statements in the petition). And because social workers have absolute immunity for

filing petitions with the court—even ones with false statements or ones filed for improper reasons—the other two claims fail.[6] To the extent Hancock asserts a claim based on Miller's execution of the judicial order—which would be protected by qualified immunity rather than absolute immunity—such a claim is, as discussed earlier, barred by *Rooker–Feldman. Kovacic*, 724 F.3d at 695.

As for the failure to disclose exculpatory evidence, Hancock does not detail any legal duty to disclose exculpatory evidence in a removal proceeding. But if there were such a duty, Miller would be immune just like any prosecutor violating *Brady* disclosure requirements. *See Brady v. Maryland*, 373 U.S. 83 (1963).[7]

Hancock's brief also mentions B.B.'s claims. Her procedural due process claim echoes the arguments we have already addressed. Her Fourth and Fourteenth Amendment claims focusing on obtaining and executing the EPO fail for the same reasons we have explained.

The only remaining claim against Miller that is not covered by absolute immunity is the due process claim for conspiracy in violation of 42 U.S.C. § 1983. But Hancock did not bring a § 1983 conspiracy claim in her amended complaint. She only

---

[6] Hancock also argues that Miller violated her procedural due process rights "by seeking and obtaining a [sic] ex parte order where there were no exigent circumstances." (Appellant's Br. at 50.) To be sure, a parent may prevail on a procedural due process claim for failure to provide a pre-deprivation hearing before interfering with their family integrity. *See, e.g.*, *Schulkers v. Kammer*, 955 F.3d 520, 545–46 (6th Cir. 2020). But Hancock only alleges that Miller wrongfully sought the EPO. This also falls under the absolute immunity for legal advocacy.

[7] *See Koubriti v. Convertino*, 593 F.3d 459, 470 (6th Cir. 2010) ("Just as we stated above, *Jones* and *Imbler* make clear that absolute immunity protects a prosecutor from civil liability for the non-disclosure of material exculpatory evidence at trial.")

brought a § 1985 conspiracy claim, which she did not raise on appeal. So we affirm the district court's dismissal of this claim.

## D. Fourth and Fifth Amendment Claims Against Detective Cornelius and Lieutenant Holmes

Hancock alleged that Holmes and Cornelius violated her Fifth Amendment rights by interrogating her without reciting her *Miranda* rights to elicit statements that the government later used in a criminal proceeding. She also alleged that Detective Cornelius violated her Fourth Amendment right when he "pinged" her cell phone location without a warrant. We reject the first argument for insufficient pleading and the second because Cornelius is entitled to qualified immunity.

Officers can be liable in § 1983 lawsuits for Fifth Amendment violations. *See McKinley v. City of Mansfield*, 404 F.3d 418, 437 (6th Cir. 2005). The government violates the Fifth Amendment when it uses incriminating statements that it obtained illegally. So when the government does not use the statements in a criminal proceeding, "the plaintiff may not sue because he has not suffered the injury against which the Fifth Amendment protects." *McKinley*, 404 F.3d at 438.

Hancock's Fifth Amendment claim fails for insufficient pleading. She never explains what incriminating statements she made. And she does not allege any particular criminal proceeding in which the government used the statements. She simply claims that her statements "are now being used against his [sic] in criminal court." (Appellant's Br. at 62.) But "[l]egal conclusions that are masquerading as factual allegations" are not enough to carry Hancock's claims. *Heyne v. Metro.*

*Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) (quotation marks and citation omitted).

For the Fourth Amendment claim, the district court ruled that Cornelius was entitled to qualified immunity for pinging Hancock's cell phone. Because he reasonably believed that the circumstances were exigent, he did not violate her clearly established constitutional right. In reply, Hancock argues that excluding the documents that she moved to exclude would remove any justification for pinging her cell phone. Because we affirm the district court in denying the motions to exclude, we reject this claim.

Hancock also asserts that the district court's exigency finding relied on the truth of the statements in the juvenile court order. But the district court only addressed the exigent circumstances based on Cornelius' view of the situation. Since the actual truth of the statements in the court documents would not impact Cornelius' justified reliance, the district court did not need to assume the accuracy of the statements.

Finally, Hancock argues that exigency is a question of fact for a jury, which would preclude a 12(b)(6) dismissal. But her only argument against exigency is that the court should have excluded the document establishing the exigent circumstances. Since that boils down to a legal question of evidence exclusion, there is no question for the jury.

### III. CONCLUSION

For these reasons, we **AFFIRM** the district court.