Filed 3/14/22  M.M. v. Koinonia Foster Homes CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| M.M., a Minor, etc., | E074331 |
| Plaintiff and Appellant, | (Super. Ct. No. CIVDS1700467) |
| v. | OPINION |
| KOINONIA FOSTER HOMES, INC., et al., |  |
| Defendants and Respondents. |  |

APPEAL from the Superior Court of San Bernardino County.  Bryan F. Foster, Judge.  Affirmed in part, reversed in part.

Law Offices of Garrotto & Garrotto and Greg W. Garrotto, for Plaintiff and Appellant.

ClouseSpaniac, Katharine L. Spaniac and Erin A. Halas, for Defendant and Respondent, Koinonia Foster Homes, Inc.

Beach Law Group, Thomas E. Beach, Mindee J. Stekkinger and Molly M. Loy, for Defendants and Respondents, County of Los Angeles and Angela Sherzada.

# I.

## INTRODUCTION

M.M.'s foster parents, Robert and Emily Ismael, were convicted of criminal offenses related to Mr. Ismael's physical abuse of M.M.  M.M. sued Los Angeles County, her Los Angeles County social worker, and the foster care agency that placed her with the Ismaels for violating her federal civil rights.  She also sued the foster care agency for negligence.  The trial court sustained defendants' demurrers to M.M.'s civil rights claims without leave to amend and granted summary judgment to the foster care agency on M.M.'s negligence claims.  M.M. appeals, and we reverse in part and affirm in part.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2013, when M.M. was two years old and under the jurisdiction of the Los Angeles County juvenile court, her social worker at the Los Angeles County Department of Child and Family Services (the Department), Angela Sherzada, placed her with Koinonia Foster Homes, Inc.  Koinonia is a private, non-profit foster care placement agency, which contracts with the County to provide services for foster children.

Koinonia certified the Ismaels' home as a licensed foster home and certified the Ismaels to be foster parents in December 2012.  Koinonia placed M.M. and her sister

---

[1] The following facts are drawn from the evidence the parties provided in Koinonia's motion for summary judgment and M.M.'s opposition to it.  We do not consider this evidence when assessing whether M.M. stated viable claims, and instead review only the operative complaint.  (See *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)

with the Ismaels on November 22, 2013, where Koinonia had placed their brother about a month earlier.

During M.M.'s placement, Koinonia social workers consistently visited the children at the Ismaels' home. The social workers spoke with M.M. and her siblings and discussed any concerns. M.M. never reported any problems with Mr. Ismael, and the social workers did not observe any inappropriate behavior by him during the visits. The Ismaels reported, however, that M.M. had psychological and behavioral issues, including throwing tantrums, which Koinonia had disclosed to them before her placement. Because Koinonia could not authorize therapy for M.M., it contacted the Department to request therapy services for M.M. to address her behavioral and psychological issues.

Around February 24, 2014, the Ismaels were arrested after M.M. suffered burns all over her body. Mr. Ismael was charged and convicted of child cruelty with a great bodily injury enhancement and Mrs. Ismael pled guilty to disturbing the peace.

M.M. sued the County, Sherzada, Koinonia, and the Ismaels.[2] In her First Amended Complaint, M.M. asserted claims against the County and Sherzada, and Koinonia under 42 U.S.C. section 1983 (section 1983) for alleged violations of her civil rights. She also alleged two negligence claims against Koinonia.

After Koinonia and Sherzada's successful demurrers, M.M. filed a Second Amended Complaint (SAC) in which she again asserted claims against the County and Sherzada under section 1983 for violating her civil rights and two negligence claims

---

[2] The Ismaels are not parties to this appeal.

against Koinonia. Defendants demurred to M.M.'s section 1983 claims, and the trial court sustained the demurrers without leave to amend as to Koinonia, but with leave to amend as to the County and Sherzada.

In her operative Third Amended Complaint (TAC), M.M. again alleged section 1983 claims against the County and Sherzada and two negligence claims against Koinonia. The County and Sherzada demurred to the TAC, which the trial court sustained without leave to amend. The trial court later granted summary judgment to Koinonia on M.M.'s negligence claims and entered judgment for defendants. M.M. timely appealed.

## III.

## DISCUSSION

M.M. contends the trial court erroneously sustained Sherzada's and the County's demurrers without leave to amend and improperly granted summary judgment for Koinonia. We agree as to M.M.'s claims against Sherzada, but disagree as to her claims against the County and Koinonia.

A. *M.M.'s Section 1983 Claims Against The County*

M.M. alleged two section 1983 claims against the County. In the first one, the TAC's third cause of action, M.M. alleges that the County, through Sherzada and her unidentified supervisors, violated her federal constitutional rights by failing to provide for her serious medical needs. M.M. alleges that Sherzada and her supervisors knew that she had a serious medical need for therapy, yet they failed to obtain it for her. In her second

4

section 1983 claim against the County, she alleges that the County violated her federal constitutional rights by failing to protect her from the Ismaels.

"On appeal, a plaintiff bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law. . . . Because a demurrer tests the legal sufficiency of a complaint, the plaintiff must show the complaint alleges facts sufficient to establish every element of each cause of action. . . . [¶] When a demurrer is sustained without leave to amend, this court decides whether a reasonable possibility exists that amendment may cure the defect; if it can we reverse, but if not we affirm. (*Rakestraw v. California Physicians' Service*, *supra*, 81 Cal.App.4th at p. 43.)

The County may not be held liable under section 1983 "under a theory of respondeat superior for the actions of its subordinates." (*Castro v. County of Los Angeles* (9th Cir. 2016) 833 F.3d 1060, 1073 (en banc).) But it may be liable for its employees' constitutional violations under *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 (*Monell*). To state a *Monell* claim, "[t]he plaintiff must establish that: (1) the plaintiff was deprived of a constitutional right; (2) the government entity had a policy; (3) this policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation." (*Perry v. County of Fresno* (2013) 215 Cal.App.4th 94, 105-106.)

The County asserts M.M. fails to state a *Monell* claim because the TAC contains no allegations that the alleged violations of her constitutional rights—the County's

5

alleged failure to obtain therapy services for her and to protect her from the Ismaels—were caused by a County policy, practice, or custom. We agree.

In the TAC, M.M. alleges Sherzada and her supervisors knew her Medi-Cal insurance had elapsed yet failed to renew it. She also alleges Sherzada and her supervisors knew M.M. needed therapy for her behavioral and psychological issues because the Ismaels had requested it, but Sherzada and her supervisors failed to obtain it for her. When Sherzada and/or her supervisors eventually authorized therapy services for M.M., the provider placed her on a waiting list and did not see her before Mr. Ismael's abuse. M.M. asserts the abuse would not have occurred had she timely received therapy.

But M.M. also alleges that Sherzada and her supervisors were "aware that according to policies and procedures, they were mandated under law to authorize any therapy and or counseling." Thus, according to M.M.'s own allegations, Sherzada and her supervisors were not following any County policy, practice, or custom when they failed to obtain therapy services for M.M. Rather, M.M. alleges that County policy *required* Sherzada and her supervisors to authorize those services. In other words, the TAC failed to allege that a County policy, practice, or custom caused M.M. not to receive therapy in violation of her constitutional rights.

The TAC likewise fails to identify any applicable County policy, practice, or custom that was the "moving force behind" the County's alleged failure to protect M.M. from the Ismaels. The thrust of M.M.'s failure-to-protect claim is that Sherzada placed M.M. in the Ismaels' home "knowing that they were not appropriate foster parents and

6

failed to appropriately monitor the placement," which put M.M. at a substantial risk of serious harm. But the claim does not allege Sherzada was following any specific County policy, practice, or custom that caused her to knowingly place M.M. in a dangerous home. The claim also does not allege any facts suggesting that Sherzada failed to adequately monitor M.M.'s placement because she was following a County policy, practice, or custom.

In fact, M.M. alleges that County regulations and its contract with Koinonia mandated that Sherzada and her supervisors place M.M. in a safe foster home and monitor her placement to ensure her safety and well-being. Moreover, the TAC's allegations also relate only to M.M.'s experience with Sherzada and her alleged failure to protect M.M. and obtain medical care for her. Her alleged failures, without more, do not reveal adherence to any policy, practice, custom of similar behavior. (See *City of Oklahoma City v. Tuttle* (1985) 471 U.S. 808, 841-842 ["'Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'"].)

In sum, M.M. failed to allege a valid *Monell* claim against the County. Because M.M. does not attempt to explain in her opening brief how she could amend the TAC to state a viable *Monell* claim, we conclude the trial court properly sustained the County's demurrer to M.M.'s claims against the County without leave to amend.

B. *M.M.'s Section 1983 Claims Against Sherzada*

In her first section 1983 claim against Sherzada, M.M. alleges that Sherzada intentionally failed to obtain therapy services for her. She claims Sherzada knew therapy was necessary to address M.M.'s behavioral and psychological issues and, without therapy, she would be placed at a risk of harm from the Ismaels because they would respond to her behavior in a harmful way. In her second section 1983 claim, M.M. alleges that Sherzada knowingly placed her in the Ismaels' inappropriate home and failed to adequately monitor the placement. M.M. contends Sherzada's failures violated her federal constitutional rights.

As to M.M.'s first section 1983 claim, Sherzada demurred on the ground that the claim fails to allege facts showing that she was deliberately indifferent to M.M.'s serious medical needs. Sherzada also demurred to the claim on the ground that M.M. does not identify a County policy Sherzada followed that caused her to ignore M.M.'s serious medical needs. As to M.M's second section 1983 claim, Sherzada argued she is absolutely immune because the claim is based on her alleged failure to investigate her suspicions that the Ismaels abused and did not properly care for M.M.

"'Once the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care.'" (*Tamas v. Dept of Social and Health Services* (9th Cir. 2010) 630 F.3d 833, 845 (*Tamas*).) A foster child's due process rights therefore are violated when a state official exhibits deliberate indifference to a child's serious medical needs or fails to protect the

8

child from abuse in a foster home with deliberate indifference. (*Henry A. v. Willden* (9th Cir. 2012) 678 F.3d 991, 1001 (*Henry A.*).)

"[T]he deliberate indifference standard, as applied to foster children, requires a showing of an objectively substantial risk of harm and a showing that the [government] official[] w[as] subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." (*Tamas*, *supra*, 630 F.3d 833, 845.) "Deliberate indifference is a high legal standard." (*Toguchi v. Chung* (9th Cir. 2004) 391 F.3d 1051, 1060.) Even gross negligence is insufficient to meet it. (*L.W. v. Grubbs* (9th Cir. 1996) 92 F.3d 894, 899.)

As for M.M.'s first section 1983 claim against Sherzada, we first reject Sherzada's argument that she is not liable for the claim because M.M. does not allege Sherzada was following County policy when she allegedly ignored M.M.'s serious medical needs. A section 1983 plaintiff must allege that a municipality's policy, practice, or custom caused a municipality's employee to violate the plaintiff's civil rights to bring a claim against the municipality. (*Monell*, *supra*, 436 U.S. at p. 694.) But there is no such requirement to bring a section 1983 claim against a municipality's employee for alleged constitutional violations. (See *ibid.*; *Lockett v. County of Los Angeles* (2020) 977 F.3d 737, 740.)

A foster child may bring a claim against his or her social worker under section 1983 if the social worker is deliberately indifferent to the child's serious medical needs. (*Henry A.*, *supra*, 678 F.3d at p. 1001.) A delay in medical care caused by deliberate

9

indifference can support a section 1983 claim if the defendant knows that the delay "would cause significant harm." (*Hallett v. Morgan* (9th Cir. 2002) 296 F.3d 732, 746; *McGuckin v. Smith* (9th Cir. 1991) 974 F.2d 1050, 1059, overruled on other grounds by *WMX Technologies, Inc. v. Miller* (9th Cir. 1997) 104 F.3d 1133, 1136 (en banc).) It follows that a social worker's delay in procuring medical services for a foster child's serious medical needs may be actionable under section 1983 if the delay is a result of the social worker's deliberate indifference and the delay causes the child significant harm.

In her first section 1983 claim against Sherzada, M.M. alleges Sherzada knew that M.M. had a serious medical need for therapy and could not safely live with the Ismaels without it. Although M.M. alleges Sherzada intentionally did not immediately act on the Ismaels' requests that M.M. receive therapy services, she also alleges that Sherzada eventually referred M.M. to therapy at some unidentified point. But, according to M.M., the provider placed her on a waiting list, so she did not receive the "immediate care" she needed.

M.M.'s first section 1983 claim against Sherzada thus alleges that (1) M.M. had a serious medical need for therapy to address her behavioral and psychological issues, (2) Sherzada knew M.M. needed therapy, (3) she intentionally delayed referring M.M. to therapy, (4) she knew that M.M. could not live safely with the Ismaels without receiving therapy, and (5) she did not timely try to procure therapy services for M.M. Taken together, M.M. alleges that Sherzada consciously ignored her immediate need for therapy without justification and knew that doing so would place her at risk of harm from the

10

Ismaels. Liberally construing M.M.'s allegations, M.M. sufficiently states a cognizable claim that Sherzada ignored her serious medical needs with deliberate indifference in violation of her federal due process rights. The trial court erred in finding otherwise.

Sherzada contends M.M.'s serious medical needs claim nonetheless fails because she does not allege that she had an *immediate* need for therapy services. Sherzada claims that M.M. must allege such a need under *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, to state a viable section 1983 claim.

Assuming Sherzada is correct, M.M. satisfied that burden. M.M. alleges that, for about three months, Sherzada failed to respond to the Ismaels' multiple requests that she receive therapy service while she was placed with the Ismaels. M.M. alleges that Sherzada became aware that M.M. "required medical services" to address her behavioral and psychological issues "[s]hortly after" she was placed with the Ismaels. M.M. also alleges Sherzada knew "[f]or months" that M.M. needed therapy services before Sherzada made a therapy referral for her despite the Ismaels' repeated requests. M.M. thus plausibly alleged that she had a serious medical need for immediate therapy services. As a result, we conclude M.M. alleged a viable section 1983 claim against Sherzada that she acted with deliberate indifference to her serious medical needs in violation of her federal due process rights. (See *Henry A.*, *supra*, 678 F.3d at p. 1001.)

11

Sherzada argues the claim still fails, as does M.M.'s second section 1983 claim,[3] because she is absolutely immune from suit under section 1983.  To support her position, Sherzada relies on *Jenkins v. County of Orange* (1989) 212 Cal.App.3d 278 (*Jenkins*) and *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869 (*Alicia T.*).  Neither case helps Sherzada.

In *Jenkins*, relatives of a child alleged that a county social worker insufficiently investigated unfounded reports that the child was being abused, removed the child based on those reports without a court order, failed to consider all relevant evidence, and made intentional misrepresentations to the juvenile court when justifying the child's removal. (*Jenkins*, *supra*, 212 Cal.App.3d at pp. 281-282, 286.)  The relatives sued the social worker for various claims, including for claims under section 1983.  (*Id*. at pp. 286.)  The *Jenkins* court held the social worker was absolutely immune from the claims because they were based on the social worker's "'quasi-prosecutorial'" functions of investigating abuse, removing a child based on that investigation, and presenting evidence to the juvenile court.  (*Id*. at pp. 286-287.)

In *Alicia T.*, parents of a minor child sued county social workers under section 1983 after the social workers initiated dependency proceedings.  (*Alicia T.*, *supra*, 222 Cal.App.3d at pp. 874-875.)  The *Alicia T.* court agreed with *Jenkins* and held the social workers were "absolutely immune" from the parents' section 1983 claims "alleging the

---

[3] The County argued in its demurrer and in its respondent's brief that M.M.'s second section 1983 claim against Sherzada fails only because Sherzada is absolutely immune from the claim.

improper investigation of child abuse, removal of a minor from the parental home based upon suspicion of abuse and the instigation of dependency proceedings." (*Id*. at p. 881.)

*Jenkins* and *Alicia T.* largely do not apply here. In both cases, the social workers were sued in part for their removing children and their involvement with juvenile court proceedings. Social workers generally are immune from claims based on those actions. (See *Caldwell v. LeFaver* (9th Cir. 1991) 928 F.2d 331, 333; *Tamas*, *supra*, 630 F.3d at p. 842.)

But Sherzada contends *Jenkins* and *Alicia T.* also hold that social workers are absolutely immune from section 1983 claims, like M.M.'s, that allege a social worker did not investigate suspected abuse of a foster child, did not adequately supervise a foster child's placement, and/or did not remove the foster child from an abusive foster home. To the extent that *Jenkins* and *Alicia T.* so hold, we conclude they do not accurately reflect the law and so we decline to follow them.

Immunity from section 1983 claims is governed by federal law. (*Newton v. County of Napa* (1990) 217 Cal.App.3d 1551, 1562; *Martinez v. California* (1980) 444 U.S. 277, 284.) Since *Jenkins* and *Alicia* were decided over 30 years ago, federal courts have consistently held that social workers enjoy absolute immunity from section 1983 claims only "when they are performing quasi-prosecutorial and quasi-judicial functions." (*Tamas*, *supra*, 630 F.3d at p. 842.) These are actions "where a social worker contributes as an advocate to an informed judgment by an impartial decisionmaker." (*Caldwell v. LeFaver* (9th Cir. 1991) 928 F.2d 331, 333.) Put another way, "social workers are

13

absolutely immune only when they are acting in their capacity as *legal advocates*— initiating court actions or testifying under oath—not when they are performing administrative, investigative, or other functions." (*Holloway v. Brush* (6th Cir. 2000) 220 F.3d 767, 775 (en banc).)

Thus, "[t]he factor that determines whether absolute immunity covers a social worker's activity or 'function' under scrutiny is whether it was investigative or administrative, on one hand, or part and parcel of presenting the state's case as a generic advocate on the other. Absolute immunity is available *only if* the function falls into the latter category." (*Hardwick v. County of Orange* (9th Cir. 2017) 844 F.3d 1112, 1115, italics added.) For that reason, "the scope of absolute immunity for social workers is extremely narrow." (*Miller v. Gammie* (9th Cir. 2003) 335 F.3d 889, 898.)

As M.M. correctly observes, "social workers are not afforded absolute immunity for their investigatory conduct, discretionary decisions or recommendations." (*Tamas*, *supra*, 630 F.3d at p. 842.) For instance, social workers are not absolutely immune from section 1983 claims arising from their "decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care." (*Miller v. Gammie*, *supra*, 335 F.3d a p. 898.) They are likewise not absolutely immune for investigating whether a child should be removed (*Vosburg v. Department of Social Services* (4th Cir. 1989) 884 F.2d 133, 138), or for failing to remove a foster child from a foster parent's unsafe home. (*Tamas*, *supra*, at p. 842.)

14

M.M.'s failure-to-protect claim is not based on Sherzada's "quasi-prosecutorial" functions that could entitle her to absolute immunity.  (See *Kovacic v. Cuyahoga County Dept. of Children and Family Services* (6th Cir. 2013) 724 F.3d 687, 694 ["[S]ocial workers are entitled to absolute immunity when they engage in conduct 'intimately associated with the judicial phase of the criminal process.'  [Citation.]"]; *Vosburg v. Department of Social Services*, *supra*, 884 F.2d at pp. 137-138  [social workers were absolutely immune from section 1983 claims arising from their filing of a removal petition because they "were acting in a prosecutorial . . . capacity"].)  Instead, it is based entirely on Sherzada's alleged inappropriate placement of M.M. with the Ismaels, her alleged failure to investigate suspicions that the Ismaels were abusing M.M., and her alleged failure to remove M.M. from their home.  All of these alleged actions are discretionary decisions that are not entitled to absolute immunity.  (See *Miller v. Gammie*, *supra*, 335 F.3d at p. 898; *Hardwick v. County of Orange*, *supra*, 844 F.3d at p. 1115; *Tamas*, *supra*, 630 F.3d at p. 842.)

We therefore reject Sherzada's argument that that she is absolutely immune from M.M.'s second section 1983 claim.  Because that is the only basis for her demurrer to the claim, we conclude the trial court erred in sustaining the demurrer without leave to amend.  We therefore reverse the trial court's judgment sustaining Sherzada's demurrers to M.M.'s section 1983 claims.

15

C.  *M.M.'s Claims Against Koinonia*

M.M. contends the trial court erroneously sustained Koinonia's demurrer to her section 1983 claim against Koinonia without leave to amend and erroneously granted its motion for summary judgment on her negligence claims.  We find no error.

We first reject Koinonia's argument that we lack jurisdiction to consider the trial court's order on Koinonia's demurrer because it is a non-appealable order.  (See *O'Grady v. Merchant Exchange Productions, Inc.* (2019) 41 Cal.App.5th 771, 776 fn. 3 [order sustaining demurrer to one cause of action without leave to amend "is not itself appealable [citation], but it may be reviewed on appeal from an ensuing judgment or order of dismissal."]; see also *Gavin W. v. YMCA Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662, 669 [appeal from judgment encompassed nonappealable order not identified in notice of appeal].)

We also reject Koinonia's argument that M.M. forfeited her arguments on appeal by failing to appropriately cite the record.  Koinonia is correct that M.M. at times inappropriately cites the parties' separate statements, which are not evidence.  (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 178, fn. 4.)  But M.M. cites the record sufficiently elsewhere in her opening brief to avoid forfeiting her arguments.  We therefore address M.M.'s claims on the merits.

1. *Section 1983 Claim*

M.M. asserts one section 1983 claim against Koinonia in the SAC. She alleges Koinonia contracts with the County to provide foster care services for the County's dependent minors and receives County funds for those services. M.M. asserts Koinonia is subject to various County and state regulations and must receive County approval to provide certain services to its clients, such as mental health services. Because of its contractual obligations to the County, M.M. contends that Koinonia is under "close scrutiny by the County."

Koinonia demurred to the claim on the ground that the SAC failed to allege facts showing that Koinonia acted as a state actor. We agree and thus conclude the trial court properly sustained Koinonia's demurrer without leave to amend.

"To state a claim under [section] 1983, the plaintiff must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." (*Gritchen v. Collier* (9th Cir. 2001) 254 F.3d 807, 812.) A defendant acts "under color of law" by exercising "power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" (*West v. Atkins*, 487 U.S. 42, 49.) "Action under color of state law normally consists of action taken by a public agency or officer." (*Taylor v. First Wyo. Bank, N.A.* (9th Cir. 1983) 707 F.2d 388, 389.)

But under certain circumstances, a private entity like Koinonia may be liable under section 1983 as a "state actor." (*Franklin v. Fox* (9th Cir. 2002) 312 F.3d 423,

17

441.)  "The Supreme Court has developed four different tests that 'aid us in identifying state action:  "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus."'"  (*Pasadena Republican Club v. Western Justice Center* (9th Cir. 2012) 985 F.3d 1161, 1167.)

The SAC does not clearly identify which test M.M. relies on to support her contention that Koinonia acted as a state actor, but it alleges that Koinonia "participates in a joint action with" the County and "fulfills a public function."  In her opposition to Koinonia's demurrer, M.M. confirmed that she contends Koinonia is a state actor under the public function and joint action tests.  M.M. takes the same position in her opening brief, and counsel did not suggest at oral argument that Koinonia was a state actor under another test.  We therefore address only whether the SAC alleges sufficient facts that Koinonia's conduct qualifies as state action under the public function and joint action tests.

"Under the public function test, 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'"  (*Lee v. Katz* (9th Cir. 2002) 276 F.3d 550, 554-555.)  This occurs only when the private actor is engaged in a function that is "both traditionally and *exclusively* governmental."  (*Id*. at p. 555, italics added.)  The public function test is thus rarely satisfied because "[w]hile many functions have been traditionally performed by governments, very few have been

18

'exclusively reserved to the State.'" (*Flagg Brothers Inc. v. Lefkowitz* (1978) 436 U.S. 149, 158.)

As many courts have recognized, providing foster care services is not an exclusive governmental function throughout the states. (See e.g., *Leshko v. Servis* (3d Cir. 2005), 423 F.3d 337, 343-344; *Rayburn v. Hogue* (11th Cir. 2001) 241 F.3d 1341, 1347; *Milburn v. Anne Arundel County Department of Social Servs.* (4th Cir. 1989) 871 F.2d 474, 479); *Malachowski v. Keene* (1st Cir. 1986) 787 F.2d 704, 711.) California is no different. (See *Ismael v. County of Orange* (9th Cir. 2017) 693 Fed.Appx. 507, 512 (unpublished) [holding California foster parents were not state actors].) In fact, California law provides that private entities and individuals may provide foster care services. (See Welf. & Inst. Code, § 361.2, subd. (a).) Because Koinonia was not engaging in an "exclusively governmental" function when providing M.M. foster care services, it was not acting as a state actor under the public function test.

Nor does the SAC adequately allege that Koinonia was a state actor under the joint action test. "A private party is liable under this theory . . . only if its particular actions are 'inextricably intertwined' with those of the government." (*Brunette v. Humane Society of Ventura County* (9th Cir. 2002) 294 F.3d 1205, 1211.) To be liable for a section 1983 claim under the joint action test, the state must "knowingly accept[] the benefits derived from unconstitutional behavior." (*Parks Sch. of Business Inc. v. Symington* (9th Cir. 1995) 51 F.3d 1480, 1486.) "A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was 'a willful participant in

19

joint action with the State or its agents.'" (*Franklin v. Fox*, *supra*, 312 F.3d at p. 445.) The plaintiff thus must show that "'state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'" (*Ibid.*) However, the "most salient" factor for the joint action test is "the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs." (*Perkins v. Londonderry Basketball Club* (1st Cir.1999) 196 F.3d 13, 21.)

The SAC does not allege facts suggesting "a substantial degree of cooperative action" between Koinonia and the County. (*Collins v. Womancare* (9th Cir. 1989) 878 F.2d 1145, 1154.) M.M. does not allege that Koinonia's alleged conduct was "inextricably intertwined" with the County's conduct. The SAC likewise does not allege that Koinonia and the County "acted in concert in effecting a particular deprivation of [her] constitutional rights" as co-conspirators. (*Gallagher v. Neil Young Freedom Concert* (10th Cir.1995) 49 F.3d 1442, 1453; see also *Franklin v. Fox*, *supra*, 312 F.3d at p. 445.) Critically, there are no allegations that the County knowingly benefited in any way from Koinonia's allegedly unconstitutional conduct. (See *Burton v. Wilmington Parking Authority* (1961) 365 U.S. 715, 725 [no state action under joint action test unless state "knowingly accepts the benefits derived from unconstitutional behavior"]; *Naoko Ohno v. Yuko Yasuma* (9th Cir. 2013) 723 F.3d 984, 997 [no state action because no evidence that the government "in any meaningful way accepts benefits derived from the allegedly unconstitutional actions"].) Nor are there any allegations that Koinonia lacked

independence from the County in managing its "day-to-day affairs." (*Perkins v. Londonderry Basketball Club*, *supra*, 196 F.3d at p. 21.)

Instead, M.M. alleges only that Koinonia is regulated by the County, contracts with the County, receives County funds for its services, must obtain County approval to provide mental health services, and jointly certifies foster homes and places foster children with the County. These allegations, taken individually or collectively, do not constitute "joint action" for section 1983 purposes. (See *Jackson v. Metro. Edison Co.* (1974) 419 U.S. 345, 350 ["The mere fact that a business is subject to state regulation does not by itself convert its action into that of the state"]; *Burton v. William Parking Authority*, *supra*, 365 U.S. at p. 843 [private entity is not state actor because of its "fiscal relationship with the State"]; *Blum v. Yaretsky* (1982) 457 U.S. 991, 1011 ["substantial" public funding of private entity did not convert it to state actor].)

M.M. argues otherwise, contending that Koinonia and the County were in a "symbiotic relationship." To support her position, she relies on two inapplicable cases. In *Rendell-Baker v. Kohn* (1982) 457 U.S. 830, the Court held that a private, nonprofit school did *not* act as a state actor when it fired a counselor even though it was heavily regulated by the state and received nearly all of its funding from public sources. Similarly, the Court in *Blum v. Yaretsky*, *supra*, 457 U.S. 991 held that a nursing home was not a state actor when it allegedly violated Medicaid patients' constitutional rights even though the state heavily subsidized the nursing home, regulated its licensing, and paid for 90 percent of the patients' costs. *Rendell-Baker v. Kohn* and *Blum* thus do not

21

support M.M.'s position that she sufficiently alleged that Koinonia was a state actor under the joint action test.

In sum, the SAC does not allege facts suggesting that Koinonia was a state actor because M.M. does not allege that (1) Koinonia acted jointly with the County in a way that Koinonia's allegedly unconstitutional behavior generated benefits for the County or that (2) Koinonia and the County had common goal of violating M.M.'s constitutional rights. The trial court therefore properly sustained Koinonia's demurrer to M.M.'s section 1983 claim. Because M.M. does not explain how she could amend the SAC to state a viable section 1983 claim against Koinonia, we conclude the trial court properly sustained the demurrer without leave to amend.[4]

2. *Negligence Claims*

In the TAC, M.M. asserts two negligence claims against Koinonia. In the first, M.M. alleges that Koinonia negligently placed her with the Ismaels, negligently monitored her placement, and negligently supervised the Ismaels. M.M. contends that Mr. Ismael's abuse was caused by Koinonia's breach of the duty it owed her. In her second negligence claim, M.M. alleges Koinonia violated its duty as a mandated reporter under Penal Code section 11164 to report the Ismaels' suspected abuse of M.M.

"A party moving for summary judgment bears the burden of persuasion there is no triable issue of material fact and is entitled to judgment as a matter of law. A defendant

---

[4] At oral argument, M.M.'s counsel conceded that he had "given it his best shot" at alleging facts to support M.M.'s claims and did not seek further leave to amend.

22

satisfies this burden by showing one or more elements of the cause of action in question cannot be established or there is a complete defense to that cause of action. If the defendant meets this initial burden, the opposing party must then make a prima facie showing of the existence of a triable issue of material fact. [Citation.] [¶] We review the denial of a motion for summary judgment de novo. [Citation.] We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits. We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. (*City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 25.) Thus, "[w]hen deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment." (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.)

As for M.M.'s second negligence claim, she provides no argument in her opening brief explaining why the trial court erroneously granted Koinonia summary judgment on the claim. She only states that the claim alleged that Koinonia violated its duty to report suspected child abuse under Penal Code section 11164. We therefore conclude M.M. forfeited any argument that the trial court improperly granted Koinonia summary judgment on the claim. (See *Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125 [appellant must affirmatively show the trial court prejudicially erred]; *Badie*

23

*v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [appellant forfeits argument made without analysis or authority].)

As for M.M.'s first negligence claim, she argued in her opposition to Koinonia's motion for summary judgment that the Ismaels were Koinonia's employees and that Koinonia negligently hired them. She therefore claimed that Koinonia was liable for the Ismaels' conduct under theories of vicarious liability and respondeat superior. The trial court declined to address the issues because they were "beyond the allegations pled."

"[A] summary judgment motion is directed to the issues framed by the pleadings. [Citations.] Those are the only issues a motion for summary judgment must address. [Citations.]" (*Hilton K. v. Greenbaum* (2006) 144 Cal.App.4th 1406, 1412.) We agree with the trial court that M.M. does not assert anywhere in the TAC that Koinonia is liable under theories of vicarious liability or respondeat superior. In her opening brief, M.M. does not address this aspect of the trial court's ruling, and does not point to anything in the TAC that suggests she alleged either theory of liability. We therefore conclude the trial court properly declined to address M.M.'s arguments, made for the first time in her opposition to Koinonia's summary judgment motion, that Koinonia is liable for negligence under vicarious liability or respondeat superior theories of negligence. We thus do not address M.M.'s argument that genuine issues of material fact exist as to whether the Ismaels were Koinonia's employees and whether Koinonia negligently hired them.

To succeed on a negligence claim, the plaintiff must prove that (1) the defendant owed her a duty, (2) the defendant breached that duty, and (3) the breach proximately caused her to suffer damages.  (*Doe v. United States Youth Soccer Association, Inc.* (2017) 8 Cal.App.5th 1118, 1128.)  M.M. asserts Koinonia owed her a duty to protect her from Mr. Ismael's abuse, it failed to do so, and its failure proximately caused the damages she suffered from the abuse.

In general, "there is no duty to act to protect others from the conduct of third parties."  (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 531.)  An exception to this rule, which the parties agree applies here, is when there is a "special relationship" between the parties.  (*Ibid.*)  But "even when a defendant has formed a special relationship with a plaintiff, courts uniformly hold that the defendant has no duty to protect the plaintiff from unforeseeable third-party criminal conduct."  (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 396 (*J.L.*).)  Whether a third party's criminal conduct is foreseeable may be decided as a matter of law and is "measured by what the defendant *actually* knew" about the third party.  (*Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 156 (*Margaret W.*), italics added.)

For instance, the defendant in *J.L.*, a family childcare services corporation, was not liable for the sexual assault the minor plaintiff suffered in a daycare home that the defendant recommended.  (*J.L.*, *supra*, 177 Cal.App.4th at p. 391.)  The *J.L.* court held the assault was not reasonably foreseeable because there was no evidence the assailant had a history of sexual misconduct or that "any type of criminal or violent" activity had

ever occurred in the daycare home. (*Id*. at p. 398.) The defendant therefore did not breach any duty to the plaintiff because there was no evidence the defendant "had actual knowledge of [the assailant's] assaultive tendencies or that he posed any risk of harm." (*Ibid*.)

*Romero v. Superior Court* (2009) 89 Cal.App.4th 1068 (*Romero*) involved similar facts. There, the defendants hosted their child's teenage friends at their home, and one of the teenagers sexually assaulted the plaintiff while the defendants were picking up food. (*Id*. at pp. 1073-1075.) The *Romero* court held the defendants had no duty to protect the plaintiff from the assault because there was no evidence that the defendants "had prior *actual knowledge*, and thus *must have known*, of the offender's assaultive propensities." (*Id*. at p. 1084.)

The defendant in *Margaret W.* likewise was not liable for plaintiff's rape. (*Margaret W.*, *supra*, 139 Cal.App.4th at p. 145.) The defendant there had a special relationship with the teenage plaintiff because she allowed the plaintiff to sleepover at her house. (*Id.* at pp. 145, 152.) Unknown to the defendant, the plaintiff left the house in the middle of the night with some boys, who later raped her. (*Ibid*.) The court noted that in determining the defendant's "liability for the criminal conduct of a third party . . . foreseeability is the crucial factor," and held her "liability [was] governed by what she should have known rather than what she actually knew." (*Id*. at pp. 156-157.) The *Margaret W.* court held the defendant had no duty to protect the plaintiff from the boys because the defendant did not know the boys would rape her. (*Id*. at pp. 157-158.) In

reaching this conclusion, the court rejected the plaintiff's arguments that the defendant owed her a "duty to investigate" and to make "forecasts based on the information such an investigation might have revealed." (*Id*. at pp. 156-157.)

*J.L.*, *Romero*, and *Margaret W.* thus show that Koinonia is liable for Mr. Ismael's abuse of M.M. only if it knew of his violent tendencies. The undisputed evidence demonstrates that Koinonia had no such knowledge.

Neither Mr. nor Mrs. Ismael had a criminal record before their arrests. Both of them cleared multiple background checks. Koinonia policy required them to agree not to use corporal punishment and to report child abuse. Koinonia routinely visited the Ismaels' home and spoke with M.M. and her siblings during her months-long placement. Neither M.M. nor her siblings reported any concerns that suggested the Ismaels might abuse them. Koinonia's social workers thus had no suspicions that Mr. Ismael would abuse M.M. M.M. offers no evidence to undermine Koinonia's position that it was entirely unaware that Mr. Ismael had violent tendencies and was likely to assault M.M.

On this record, we conclude Mr. Ismael's criminal conduct toward M.M. was not foreseeable because there is no evidence that Koinonia "had prior *actual knowledge*, and thus *must have known*, of [Mr. Ismael's] assaultive propensities." (*Romero*, *supra*, 89 Cal.App.4th at p. 1084.) As a result, Koinonia did not breach any duty it owed M.M. The trial court therefore properly granted Koinonia's motion for summary judgment on M.M.'s first negligence claim.

IV.

DISPOSITION

The judgment for Sherzada is reversed, but the judgments for the County and Koinonia are affirmed.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

SLOUGH
J.